IN RE WILL OF ANN ELIZABETH SLOAN RUTLEDGE.

OSCAR FRANK ALLEN, Appellee, v. O. L. RUTLEDGE, Appellant.

No. 40585.

OCTOBER 21, 1930.

*Percival & Wilkinson*, for appellant.

*W. T. Guiher* and *Daniel J. Gallery*, for appellee.

FAVILLE, J.—On the 29th day of May, 1915, the decedent duly executed the will which is offered for probate. By the terms of said will she disposed of all of her property to the appellee, who is not related to her in any way, but who, it appears, had lived with her for a long time. At the time of the execution of the said will, the testatrix was unmarried. Subsequently, she married the appellant. She died without leaving any children. We assume, for the purposes of this appeal, without making any pronouncement as to the law in regard to said matter, that the appellant could contest the admission of the will to probate, in view of the circumstances of this particular case. The appellant contends that the will offered for probate was subsequently revoked by the testatrix. In support of this contention, the appellant offered the testimony of a witness who testified that she had worked as a stenographer in a law office, and typed the revoking will. We quote from her testimony as follows:

"I remember of Anna Sloan-Rutledge coming to Judge Wilkinson's office and asking him if she could make a will if she had already made one, without taking up the first will. She said she had made a will and left it at John A. Guiher's office, and she wanted to make another will, because in that will she had left Frank Allen all she had, and she didn't want that will to stand, and she wanted Judge Wilkinson to make a new will for her, to take the place of that one. Judge Wilkinson dictated the will, and I wrote it on the typewriter.

"Q. Do you know whether or not the will that Judge Wilkinson dictated and you wrote on the typewriter contained any provision relative to the revocation of the will that John Guiher had in his office? A. It did, and she was very anxious to know if the old will was revoked or not, and she asked the question even after the new will was drawn. This new will was signed by her at that time, and witnessed by two witnesses. It was a new will. * * * Q. You may state what was in that will, so far

1258

as you can tell. A. I can't tell just what was in the will, but I know she did not give Frank Allen all she had. (Moved to strike answer, as a conclusion. Sustained. Exceptions saved.) That will was made after 1915. The will Judge Wilkinson dictated was signed by her there at that time, and two witnesses signed, at her request. All three of us were there at the time the signatures were made."

This witness further testified:

"Q. Was it signed by two witnesses there? A. It was. * * * I can't tell you just what was in the will. * * * Q. Do you remember who any of the beneficiaries were in that? Other than Frank Allen, if there were any? (Objected to as incompetent, irrelevant, and immaterial. Overruled. Exceptions saved.) Q. If you remember, just state. A. I just can't remember. Q. Were there other beneficiaries? A. There were. I have an indistinct recollection, but I would not like to swear what they were. Q. You are certain there were other beneficiaries, aside from Frank Allen? A. There were. Q. Do you know whether that will was made after 1915? A. Yes, sir. Q. Did she sign that will there you drew for her at that time, the one Judge Wilkinson dictated? A. Yes, sir. Q. And the witnesses signed there at her request, two of them? A. Yes, sir. * * * Q. All three of you there, at the time the signatures were made? A. Yes, sir. * * *"

"Cross-examination.

"I can't remember what year Mrs. Rutledge came to the office. I do not remember what name she signed to the instrument. It was Mrs. Sloan-Rutledge, but I don't remember what words were used, other than that. Q. You say you think it was Mrs. Sloan-Rutledge? A. The name that way, you mean? Q. Yes. A. I couldn't say. Q. Do you know whether at that time she was married to Osborn Rutledge? A. I think she was. I think it was later than that, she made the will, but I couldn't swear to it. No, sir, I do not have any recollection as to what year it was. It was warm-like weather, because she did not have any wrap on; but that is all I can remember."

The appellant, as a witness, testified:

"Am the surviving husband of Anna Elizabeth Sloan-

Rutledge. We were married March 6, 1919. We were living together at the time of her death. I have searched for her will, but have been unable to find it."

The foregoing comprises practically the entire testimony offered in the case. The question for our determination is whether this evidence is sufficient to establish the revocation of the will offered for probate. Section 11855, Code, 1927, is as follows:

"Will can only be revoked in whole or in part by being canceled or destroyed by the act or direction of the testator, with the intention of so revoking them, or by the execution of subsequent wills. When done by cancellation, the revocation must be witnessed in the same manner as the making of a new will."

This has been the law of this state since the Code of 1851. In *Gay v. Gay*, 60 Iowa 415, we said:

"When a statute provides the manner in which a will may be revoked, that manner must be pursued. *Wright v. Wright*, 5 Ind. 391; *Runkle v. Gales*, 11 Ind. 95; *Blanchard v. Blanchard*, 32 Vt. 62; *Gains v. Gains*, 2 A. K. Marshall 190; *Clingan v. Mitcheltree*, 31 Pa. St. 25; *Doe & Reed v. Harris*, 6 Ad. & Ellis 209. Our statute provides that a will may be revoked, in whole or in part: *First*. By being destroyed: *Second*. By being canceled, the cancellation being witnessed in the same manner as the making of a new will."

In *Blackett v. Ziegler*, 153 Iowa 344, at 352, we said:

"We have already copied the section of our Code with reference to the revocation of wills, and it is deemed proper, in view of some claims made by counsel, to indicate our views with reference to the proper interpretation of that statute. In the first place, it indicates that wills may be revoked, either in whole or in part. Next it indicates that revocation may be made by cancellation or destruction, or by the execution of subsequent wills; and the cancellation referred to is a written one, which must be executed in the same manner as the making of a new will. This may be, then, simply an instrument of cancellation or revocation, or it may be a part of another and subsequent will, which contains an express clause of revocation. The word

'cancellation' may have had a different meaning at common law, but in our statute it manifestly means revocation by a written instrument.''

The appellant attempted to comply with the provisions of the statute as interpreted by this court. He offered proof tending to show the revocation of the will offered for probate by the execution of a subsequent will, which contained a clause of revocation. Appellant contends that the evidence offered upon said question was sufficient to carry the case to the jury, and that the court erred in directing a verdict.

In *In re Will of Dunahugh*, 130·Iowa 692, we said:

''Without doubt, a will may be revoked by the due execution of a subsequent will. Code, Section 3276. Proof of the execution of a subsequent instrument testamentary in character is not sufficient of itself, however, to establish revocation. There must be either an express clause of revocation, or an inconsistent disposition of the previously devised property. *In re Sternberg's Will*, 94 Iowa 305; 30 Am. & Eng. Encyc. 624. And the burden is on the contestant to bring forward the subsequent will and demand probate thereof. If execution of a subsequent will is alleged, and it is said that the instrument cannot be found, it is for him who so alleges to bring forward satisfactory proof, not only of due execution as required by law, but of the contents of the will.''

In the instant case, the appellant did not bring forward the subsequent will and demand probate thereof. Appellant contended that said instrument could not.be found.

In *In re Estate of Thorman*, 162 Iowa 237, we said:

''To establish a lost will or prove its contents, the evidence must be of a very clear and satisfactory character. * * * And though a will may have been made, if not found after the testator's death, it is presumed to have been revoked by destruction.''

Appellant is not seeking to establish a lost will, but he is seeking to prove certain contents of a lost will. A will is the most solemn instrument known to the law. The manner of its execution is expressly provided for by statute, and the manner of the cancellation or revocation of a will once duly executed is also a matter of statutory requirement. The burden rested

upon the appellant to establish the revocation of the will offered for probate by clear, satisfactory, and convincing proof. Giving full credit to the testimony of the witness produced by the appellant, we do not think that the evidence offered was sufficient to take to the jury the question of the claimed revocation of the will, or to permit a verdict to stand if the jury had returned a verdict finding such fact of revocation. In other words, the evidence is not of that clear, satisfactory, and convincing character that the law requires, and should require, in a case of this kind. The only witness who attempts to testify to the execution of the subsequent will containing the clause of revocation is so indefinite and uncertain in her testimony that it must be said, as a matter of law, that the proof is not of that clear, satisfactory, and convincing character that is required, to establish the execution of a solemn instrument of revocation. The witness is very uncertain and indefinite as to when the alleged second will was made. She makes no pretense of knowing the contents of the will, except in the most indefinite and uncertain manner. She cannot name the attesting witnesses, so that they can be identified or produced. She makes no pretense to even describe the witnesses, so that there could be any ascertainment as to whether or not they were competent witnesses, as the law requires in the execution of such an instrument. Code Section 11852. There is no accounting for the loss or destruction of the will, if it was ever executed. In the motion for a directed verdict, the appellee directly challenged the sufficiency of the evidence to show that the will offered for probate had been revoked. The court sustained said motion, and we think rightly so. A will, duly executed in proper form, is too sacred and solemn an instrument to be annulled by a claimed revocation, except upon very clear, cogent, satisfactory, and convincing evidence. Such claimed revocation must comply with the requirements of the statute. We think the evidence in the instant case falls so far short of meeting the requirements of the law that the court did not err in directing a verdict in behalf of the appellee.

In view of our conclusion upon this branch of the case, we deem it unnecessary to pass upon any other questions that are argued. The order of the district court in directing a verdict in behalf of the appellee and in admitting the will of the testa-

1262

trix produced by the appellee to probate must be, and it is,—
*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.