(No. 29255.—)
IN RE WILL OF MARY E. BARRIE.—(JOHN M. STAGER *et al.*, Appellees, *vs.* THOMAS HODGE *et al.*, Appellants.)

*Opinion filed January 23, 1946—Rehearing denied March 18, 1946.*

GUNN, J., dissenting.

J. J. LUDENS, of Sterling, for appellants.

WARD & WARD, and SHELDON & BROWN, both of Sterling, for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from an order of the circuit court of Whiteside county admitting to probate the last will and testament of Mary E. Barrie, deceased. The will purported to dispose of both real and personal property. The deceased executed the will on October 30, 1928. No question is raised as to its due execution, or as to her mental condition at that time. The sole question involved is whether said will was revoked by the testatrix during her lifetime.

Mary E. Barrie was a single woman. She died on December 16, 1944. At the time of her death, she was 74 years of age. She had lived practically all her life in the city of Sterling. She resided with her mother until the latter's death. For the last seventeen years she had lived alone. She entered the hospital on November 4, 1944. At that time she was suffering from senile dementia. On November 13, 1944, a conservator for her estate was appointed by the county court of Whiteside county. Her condition rapidly grew worse. Her mental condition became confused and unstable and she was forgetful. About forty-eight hours after she entered the hospital her nervous condition became violent and she had to be restrained. In something like a week after the conservator was appointed, he, in company with Mrs. Grogan, a friend and neighbor lady who had the key to the home of the deceased, entered that home. The conservator testified that at that time they found the will either on top of a desk in her living room or in an unlocked drawer in that desk. He further testified that Mrs. Grogan was positive that the will was found lying on top of the desk. He left the will undisturbed where it was found until after her death. Sometime between January 1 and January 8, 1945, he again entered the home and secured the will. He then filed the same in the county court, together with his petition, asking the court to determine whether the will should be admitted

to probate. Upon a hearing in the county court, the will was admitted to probate. The same result was reached on an appeal to the circuit court.

The will, when found by the conservator, had the word "Void" written in ink across its face in large letters in five different places, so written that the words extended across practically every provision in the will. The word "Void," as so written in the several places on the face of the will, is from two and one-half to four inches in length. The initial letter "V" in the word "Void," was from one inch to nearly two inches in height. The letters "o" and "i" were approximately one-fourth of an inch in height and the final "d" was from one-half to almost three-quarters of an inch in height. The word "Void" was also written across the attestation clause. On the first page of the will the word "Void" was written three times, extending practically across the entire portion of the will written on that page. There was also written in pencil on the left hand margin of the first paragraph, the word "No" and the word "Change." On the left-hand margin opposite the second paragraph of the will, the word "No" was also written in pencil. That paragraph of the will, as drawn, devised and bequeathed the remainder of her property, "except a note signed by Annie Diller, mentioned in the third clause hereof." When the will was found, these words had a pencil line drawn horizontally through them. The record shows that the note there referred to was paid in full by Annie Diller on December 16, 1939. Also on that page, on the left-hand margin of the will, opposite the third paragraph, the word "Change" and three cross marks were written in pencil. A like cross mark appeared on the right-hand margin. On the second page the word "Void" was written twice, extending practically across the entire portion of the will written on that page. On the outside of the cover, which the proof showed was attached to the will at the time it was executed, there was written in ink the

word "Void." Immediately under the word "Void" was the name, "M. E. Barrie," also written in ink. On the outside of the envelope in which the will was placed by the attorney who prepared it, the word "Void" was written. Immediately under the word "Void" on the envelope was the name, "Mary E. Barrie." Beneath the name, the word "Void" was again written. All of these endorsements on the envelope were in pencil. The questions involved are whether the word "Void" written, as indicated, across practically every paragraph and provision on the face of the will and the attestation clause, and the marginal notations above referred to, were placed there by the testatrix and, if so, were they sufficient to constitute a revocation of the will?

No witness testified who was familiar with the handwriting of the deceased. The only evidence touching the question of whether the endorsements and marginal notations on the will, the cover, and the envelope, were in the handwriting of the testatrix, was that of a local handwriting expert. He was not familiar with her handwriting. He testified only from his comparison of the writing on the will with some specimens of her handwriting on certain other exhibits admitted in evidence for that purpose. The original will has been certified to this court. The evidence shows that the deceased was employed for some years as a bookkeeper by a businessman who was conducting a manufacturing business in the city of Sterling. It was shown that a ledger kept in that business, covering the years 1919 and 1920, was in the handwriting of the deceased. This ledger was admitted in evidence and has also been certified as an original exhibit to this court. Other than the exhibits, there is no evidence in the record tending to identify the handwriting of the deceased except the opinion of the expert. This court is, therefore, in the same position as the trial court, and has before it all the advantages of an examination of the exhibits which the

trial court had. There is no question involved as to the weight of conflicting testimony. The original exhibits having been certified to this court, there is before us every element which could be considered by the trial court in the determination of the issue involved.

Section 46 of the Probate Act provides that, in addition to the revocation of a will by a subsequent will or codicil, duly executed, a will may be revoked "(a) by burning, cancelling, tearing or obliterating it by the testator himself or by some person in his presence and by his direction and consent." (Ill. Rev. Stat. 1945, chap. 3, par. 197.) A revocation is the annulment or cancellation of an instrument. As applied to wills, it is an act of the mind, manifested by some act done by the testator recalling his will. (*Ater* v. *McClure,* 329 Ill. 519.) To revoke is to recall, cancel or set aside; an annulment or cancellation of an instrument on behalf of the party who made it. It is an act of revoking by one having the right, as the revocation of an edict, a power, a will or license. It is an act manifested by something done by the testator which recalls his will. (*Ford* v. *Greenawalt,* 292 Ill. 121.) It means to nullify, declare null and void; to set at naught the provisions of the instrument; to cancel and declare them null and void. *Friedman* v. *City of Chicago,* 374 Ill. 545.

In *Noesen* v. *Erkenswick,* 298 Ill. 231, the testatrix went to her attorney and asked him how her will could be cancelled. He directed her to bring the will to his office, which she did. He then told her it could be revoked by tearing it up or destroying the signature or by writing a cancellation across the face. By her direction he wrote across the face of the will the words, "I hereby cancel and annul the within instrument this 26th day of May, 1915." She signed the endorsement with the word "Seal" annexed to her name. We held this to be a sufficient revocation. We there said: "Any act which is in compliance with the statute manifesting an intention to revoke a will is suffi-

cient, and the question is whether the writing across the face of this will constituted a cancellation in conformity to the statute. In the case of *Burton* v. *Wylde,* 261 Ill. 397, where the signature of the testatrix to a codicil had been cut out and the cutting had the effect of destroying words appearing in the will in the residuary clause on the other side of the page, it was held that both codicil and will were revoked. The provision of the statute being that a will can only be revoked by certain methods, including cancellation, or by some other will, testament or codicil in writing executed as therein provided, a mere writing on the back of a will or on a blank marginal space which merely amounts to a revocation by a separate instrument not attested as required by the statute is not sufficient. If the will is canceled by writing there must be a physical cancellation of some portion of the will. (*Dowling* v. *Gilliland,* 286 Ill. 530.) In that case there were two notations on the back of the will, one of which was not dated and neither of them was signed. On the face of the will, in blank spaces, there were notations not signed. It was held in accordance with the statute that such a writing, not across any language of the will, merely amounts to an unattested instrument of revocation and is inoperative. That is not the case here, and if a cancellation can be made by any writing across the face of a will this will was revoked. The writing was across and upon a part of the signature, the date, the name of the executor and the devise made by the will, and it would be difficult to conceive of more effectual cancellation by writing. Of course, a will may be canceled by erasing its provisions or rendering them illegible, which would amount to the destruction of the will, but to cancel does not necessarily mean that. It does mean to disannul, nullify and declare null and void the instrument; to set at naught its provisions and declare it null and void. It is true that, notwithstanding the writing, the original will can be read, although with some difficulty, but

that is equally true where there is a cancellation on the face of any instrument. Surely no one can be found who would say that a postage stamp is not canceled because he can still see that it is a postage stamp, nor that a provision of any document is not canceled by drawing a line through it with pen and ink although the words can still be read, nor that any banker, whatever he might think of other methods of cancellation, would pay a check canceled by writing across the face merely because he could see what the check was before cancellation. It would be going far beyond the statute to say that a will is not canceled unless the words are erased or obliterated so that the nature of the will before cancellation, or its provisions, cannot be discovered."

In *Board of Missions* v. *Sherry*, 372 Ill. 272, the rule announced in *Noesen* v. *Erkenswick* was stated in the following language: "In order to constitute the revocation of a will by cancelling there must be a blotting or striking out, or writing over the will or an essential portion thereof, and the cancellation must be made with intent to revoke the will." The difference in the facts there involved and the facts in *Noesen* v. *Erkenswick* was pointed out. In disposing of the case the court said: "Recourse to the will in the present case discloses that the amounts of certain bequests have been stricken and reduced amounts inserted, names and designations of beneficiaries have been canceled and substitutions attempted, and, in other instances, marginal memoranda indicate that the deaths of a legatee and a devisee induced the testatrix to strike provisions made for them, irrespective of whether she knew the lapsed bequests and devises had become inoperative, and that she had disposed of items of bequeathed property to a particular legatee by gift, thereby fulfilling her wish, or by sale of property bequeathed to others, rendered fulfillment impossible. These changes, among others, demonstrate that the testatrix desired to and did alter her will from time to time but not that she was revoking or intended to

revoke the entire will and die intestate. Her intention in this regard is consistent with the condition of the will. Our examination of the instrument shows that the testatrix left the first three paragraphs intact and unmarked, namely, the declaratory or exordium clause, the first section directing payment of debts and the first paragraph of the second section giving a legacy of $500. Similarily, five other dispositive clauses of the second section, the description of one of the legatees in the fourth section, the appointment of the executor, and the testimonium clause were not in any way changed. No marks were made in an attempt to cancel Mrs. Bennett's signature at the end of the will, the attestation clause or the signatures of the attesting witnesses. Although testatrix's name appears in two other places on her will in her own handwriting, there is no mark of any kind upon any of her signatures. A consideration of the entire document leads irresistibly to the conclusion that testatrix intended her will to stand, except as to the changes she had attempted to make. The appearance of the instrument alone, in the case at bar, as in the recent case of *Fleming* v. *Fleming, supra,* furnishes satisfactory explanation without extrinsic evidence. Here, there has been no actual physical cancellation of the entire will, and further, evidence is wanting that the testatrix intended the partial cancellation should operate as a complete revocation. The interlineations and marginal memoranda were not made with the intention of revoking the will in its entirety but with intent to change the will as to certain legacies, bequests and devises. Obviously, the canceling of portions of a will with an intent to revoke parts of it, cannot amount to a revocation within the contemplation of section 17 of the Statute of Wills." The court, after summing up the facts in *Noesen* v. *Erkenswick,* concluded: "Manifestly, the facts are not parallel to those in the case at bar. Here, the will consisted of nearly three pages, no words are written across any essential part of the will such

as the testatrix's signature, the date, the name of the executor or the attestation clause, a substantial number of gifts remain untouched, and there is no express statement in writing that the testatrix intended to cancel and revoke her will."

Here the word "void," as written across the face of the will in such a way as to extend across every provision in the will, except two or three minor bequests, and also across the attestation clause, of itself, manifests the intention that the will should be void and of no further force and effect.

Where a will remains in the testator's possession until his death and is found among his papers with erasures, alterations, cancellations or tearings, the presumption is that such act, manifest upon the will, was done by the testator with the intention of revoking it. *Burton* v. *Wylde,* 261 Ill. 397.

Under the foregoing rules, the decisive question is whether the endorsements on the will were in the handwriting of the testatrix. If these endorsements were in the handwriting of the deceased, we think they clearly manifest an intention on her part to revoke the will, and were sufficient to constitute a revocation, under the statute.

As already observed, the only testimony touching the subject of the handwriting is the testimony of the witness who testified as a handwriting expert. He testified only from his comparison of the writing across the face of the will with admitted specimens of the handwriting of the deceased. He testified that he examined the specimens in evidence to determine whether the notations on the margins of the will and the lines across the will, and the cross marks, were executed by the testatrix and whether the word "Void" was placed on the will, in the different places, by her. The admitted specimens of the handwriting of the testatrix are here and we have the same opportunity to examine and compare them as had the witness and the

court below. This witness testified that the notations written in pencil on the left-hand margin of the first page of the will were in the handwriting of the testatrix. He further expressed the opinion that the words "Void" written in ink in three places across the first page of the will and in two places across the second page of the will, and the same word so written across the attestation clause, were not in the handwriting of the testatrix. On cross-examination, the only difference pointed out by him between the handwriting of the word "Void" and the admitted specimens was that the letter "o" in the word "Void," written on the will, was open at the top, while in the specimens compared in the ledger the letter "o" was closed at the top. He did not examine any of testatrix's handwriting written in large letters and with a free hand, comparable to the size and style of the word "Void" as written on the will. An examination of the word "Void" on the will, however, shows that while the letter "o" is not entirely closed at the top in the word "Void" as written across the first page of the will, that letter is entirely closed at the top in the word as written in one of the two places on the second page of the will and as written across the attestation clause. The words "Void," written on the will, are written in a much larger hand than the writing in the ledger which might easily account for the slight variation in closing the letter "o" at the top in four of the six places where the word appears on the face of the will. The ledger contains an index. In this index, eight proper names are listed which begin with the letter "V." These names are written in a slightly larger hand than the general entries in the ledger. In each of those names the letter "V" is identical with the letter "V" in the word "Void" as written on the will. In that index we find the name "Vandervoort." Both of the "o's" in that name are decidedly open at the top. On that page of the ledger index the letter "o" is written six different times, in four of which it is clearly open at the top.

The same is true of the name "Vandervoort" heading the account on the appropriate page of the ledger. The name is there spelled with one "o," which is open at the top. An examination of all the names in the ledger further shows that in practically every word in which the letter "o" appears, the "o" is open at the top, the same as that letter is written in some of the words "Void" on the face of the will. Throughout the ledger we find hundreds of words containing the letter "o." In many instances the "o" is open at the top. The letter "o" with an open top is decidedly predominant throughout the 444 pages of this ledger. The handwriting expert went so far as to say that the straight pencil line drawn horizontally through the words in the first paragraph of the will, as already indicated, was in the handwriting of the deceased. It is common knowledge that the identification of the hand that drew a straight pencil line is beyond the genius of the most enthusiastic handwriting expert.

The testimony of the handwriting expert is further contradicted by his opinion concerning the endorsement on the cover of the will. He testified that the word "Void" on the cover of the will was not in the handwriting of the deceased. He further testified that the name, "M. E. Barrie" appearing on the cover immediately below the word "Void" was, in his opinion, in her handwriting and was her genuine signature. An examination of these two words shows clearly that there is no basis whatever for his opinion. These words are all written in ink. They clearly show that they were blurred, obviously by moving the blotter slightly before the free ink was entirely absorbed. Each is blurred in exactly the same manner. They show conclusively that they were written with the same pen, with the same ink, and by the same hand at the same time. It is perfectly apparent that the word "Void" on the cover attached to the will, and which it clearly appears was written by the same hand as the genuine signature of the

testatrix written immediately below it, was written by the same hand that wrote the word "Void" across the face of the will. There is no escape from this conclusion. He further testified that the signature, "Mary E. Barrie," in pencil on the back of the envelope, was in the handwriting of the testatrix. He was just as positive that the word "Void" written above that signature and the word "Void" written below that signature were not in her handwriting, notwithstanding the letter "o" in the word "Void" above the signature was closed at the top, while the letter "o" in the word "Void" below the signature was left open at the top. The fact that in some of the words written across the face of the will the letter "o" was left open at the top was the only basis pointed out by him for his opinion that the words written across the face of the will were not written by the testatrix. From an examination of his testimony and the reasons given for his opinion, and from an examination of the specimens of the handwriting of the testatrix with which he made the comparisons, it is conclusively shown that his opinion was wholly unreliable and has no foundation, even in his own testimony. Instead of proving that the words written across the face of the will were not in the handwriting of the testatrix, his testimony clearly establishes the fact that they were. Where, as here, it appears that the distinction on which the witness based his opinion does not exist, such opinion is wholly inadmissible and without weight or value. We are not unmindful of the rule announced in *Dowling* v. *Gilliland,* 286 Ill. 530, that words endorsed on the back of a will constitute merely an unattested instrument and, standing alone, are insufficient to establish a revocation. We have here considered the words appearing on the back of the will and on the envelope, not as a revocation, but only for the purpose of testing the opinion of the handwriting expert that the writing on the face of the will is not that of the testatrix.

The expression in *Fekete* v. *Fekete,* 323 Ill. 468, that opinions as to the genuineness of handwriting are at best weak and unsatisfactory, and that there is much room for error and great temptation to form opinions favorable to the party calling the witness, is clearly demonstrated by the record in this case. The opinion of an expert may be of value only where it calls attention to facts which are capable of verification by the court, and where the opinion is based upon such facts and is in harmony therewith. *Lyon* v. *Oliver,* 316 Ill. 292.

We think it is clear from the record that the words "Void" were placed across the face of the will by the testatrix; that those words were written across the face of the will by her for the purpose of making manifest her intention to cancel and revoke the will. This is corroborated by the testimony of two life-long friends who testified to conversations with her, at different times, over a period of years. In these conversations the testatrix stated, in substance, that she had made a will but did not like it; that she had destroyed it; had "marked it void all over." This evidence was admissible. *Holler* v. *Holler,* 298 Ill. 418; *Boyle* v. *Boyle,* 158 Ill. 228.

Upon the record in this case we are forced to the conclusion that the words were written upon and across the face of the will by the testatrix in such a manner as to manifest her intention to revoke the will; that such act on her part was, under the rule announced in *Noesen* v. *Erkenswick,* 298 Ill. 231, sufficient to constitute a revocation of the will in accordance with section 46 of the Probate Act.

The orders of the circuit and county courts admitting the will to probate are each reversed. The cause is remanded to the county court with directions to enter an order refusing to admit the will to probate.

*Reversed and remanded, with directions.*

Mr. JUSTICE GUNN, dissenting.