.IN RE ESTATE OF MARY E. BARRIE.

FIRST PRESBYTERIAN CHURCH of Sterling, Illinois, Appellant, v. THOMAS HODGE et al., Appellees.

No. 47238.

(Reported in 35 N. W. 2d 658)

January 11, 1949.

Rehearing Denied March 11, 1949.

Ward & Ward and Sheldon & Brown, all of Sterling, Illinois, and Willard F. Russell, of Toledo, for appellant.

J. J. Ludens, of Sterling, Illinois, and Thomas & Thomas, of Traer, for appellees.

HAYS, J.—Appeal from an order overruling a motion to strike objections to petition for probate of the alleged last will and testament of Mary E. Barrie, deceased.

Mary E. Barrie, domiciled in Whiteside County, Illinois, died owning real and personal property in Illinois and real property in Tama County, Iowa. The instrument in question was offered for probate in Whiteside County, Illinois. Although first admitted to probate, it was later denied probate after the Illinois Supreme Court had ruled that said instrument had been revoked by cancellation and that decedent died intestate.

Thereafter the instrument was offered for probate in Tama County, Iowa, by one of the beneficiaries named therein. To the petition for probate, decedent's heirs at law filed objections based upon the judgment of the Illinois Supreme Court, to the effect that the said last will and testament had been revoked. Objectors assert that this judgment is conclusive upon the Iowa courts. Proponent's motion to strike said objections for the reason that they do not constitute a valid basis for denying probate, being overruled by the trial court, this appeal was taken.

The instrument offered for probate was duly signed by decedent and witnessed by two witnesses. By the terms thereof all property was to be converted into cash and distributed to the named beneficiaries, including appellants. When found, after the death of decedent, the instrument had the word "void" written across its face in at least five places, including the attestation clause. Also, upon the cover and upon the envelope containing same appears the word "void" written with the name "M. E. Barrie" and "Mary E. Barrie." The Illinois court

found that the writing of the word "void" on the instrument, as above related, constituted a revocation by cancellation within the purview of the Illinois Revised Statutes, 1945, chapter 3, section 197. This statute provides for the revocation of a will, "* * * (a) by burning, cancelling, tearing, or obliterating it by the testator."

No question is raised as to the due execution of the instrument either under the Illinois or the Iowa statutes. No question is raised as to the testamentary capacity of decedent, nor is it claimed by the objectors that there has been a revocation under the Iowa statute, section 633.10, Code of 1946. The question before this court for determination may be stated thus, "Is the judgment of the Illinois court, holding that said instrument had been revoked and that decedent died intestate, conclusive and binding upon the Iowa courts?"

Section 604.3, Code of 1946, provides:

"The district court of each county shall have original and exclusive jurisdiction to:

"1. Probate the wills * * * of nonresidents of the state who die leaving property within the county subject to administration * * *."

Decedent was a nonresident of the state and died owning property in Tama county which was subject to administration. Clearly the district court of Tama county has original jurisdiction to probate this instrument unless the Illinois judgment has the effect of nullifying or modifying said statute. See In re Will of Longshore, 188 Iowa 743, 176 N. W. 902. That this is in accordance with the recognized rule, see Restatement of the Law, Conflict of Laws, section 469, which states: "The will of a deceased person can be admitted to probate in a competent court of any state in which an administrator could have been appointed had the decedent died intestate", and under comment c of said provision: "Probate in a state other than at the domicil can be had although the will has not been admitted to probate in the state of the decedent's domicil." See also annotation in 119 A. L. R. 491, and authorities cited therein.

Section 633.33, Code of 1946, provides: "A will probated in

any other state or country shall be admitted to probate in this state, without the notice required in the case of domestic wills, on the production of a copy thereof and of the original record of probate."

Upon the general question as to the validity, operation, effect, etc. of a will by which property is devised, there are certain well-established and generally recognized rules, and which definitely differentiate between movable (personal) and immovable (real) property. We are only concerned with immovables in the instant case.

The general rule as stated in Story on Conflict of Laws, Eighth Ed., page 651, is, "the doctrine is clearly established at the common law, that the law of the place where the property [speaking of real (immovable) property] is locally situate is to govern as to the capacity or incapacity of the testator * * * the forms and solemnities to give the will or testament its due attestation and effect." 4 Page on Wills 688, section 1633, states the rule: "The general rule * * * is that the validity, operation, effect, etc., of a will by which real property is devised is determined by the law of the place where the land is situated." Restatement of the Law, Conflict of Laws, section 249, states: "The validity and effect of a will of an interest in land are determined by the law of the state where the land is." Upon the specific question as to revocation of a will, 2 Beale, Conflict of Laws, section 250.1, page 972, states: "The revocation of a will is governed by the law of the state of situs of the land." Restatement of the Law, Conflict of Laws, section 250, says: "The effectiveness of an intended revocation of a will of an interest in land is determined by the law of the state where the land is." See also 11 Am. Jur., Conflict of Laws, section 178. That Iowa recognized the above rule, see Otto v. Doty, 61 Iowa 23, 15 N. W. 578; Olson v. Weber, 194 Iowa 512, 516, 187 N. W. 465, 467, 27 A. L. R. 1370, where we said:

"It is a universal rule that title to real estate can be determined only in the forum in which the land is located. If this were not true no landowner within that forum would ever be certain of his title. * * * The disposition of real property,

whether by purchase or descent, is subject to the government within whose jurisdiction the property is situated."

See also In re Estate of Warner, 209 Iowa 948, 229 N. W. 241; Scofield v. Hadden, 206 Iowa 597, 220 N. W. 1; Norris v. Loyd, 183 Iowa 1056, 168 N. W. 557; Ehler v. Ehler, 214 Iowa 789, 243 N. W. 591; Jackman v. Herrick, 178 Iowa 1374, 161 N. W. 97; 50 C. J. S., Judgments, section 898.

█ Under the above-stated rule Iowa courts are free to place their construction, interpretation and sanction upon the will of a nonresident of the state who dies owning real property within the state whether the will be admitted to probate under section 604.3 or section 633.33, Code of 1946, both supra, although it has been admitted to probate in the state of the domicile of testator. Otto v. Doty, supra; Lynch v. Miller, 54 Iowa 516, 6 N. W. 740; Norris v. Loyd, supra; section 633.34, Code of 1946.

█ Does a different rule pertain where instead of being admitted to probate in the domicile state probate is denied? We think not. It is generally held that the full faith and credit provision of the Constitution of the United States, Article IV, section 1, does not render foreign decrees of probate conclusive as to the validity of a will as respects real property situated in a state other than the one in which the decree was rendered, nor does the doctrine of res adjudicata or estoppel by judgment apply. See Robertson v. Pickrell, 109 U. S. 608, 3 S. Ct. 407, 27 L. Ed. 1049, where the court said the probate established nothing beyond the validity of the will in that state, and while conclusive there, the full faith and credit clause and the Act of Congress enacted pursuant thereto did not require that they shall have any greater force and efficacy in other courts than in the courts of the state from which they were taken, but only such faith and credit as by law and usage they had there. Dibble v. Winter, 247 Ill. 243, 93 N. E. 145; Norris v. Loyd, supra; McCormick v. Sullivant, 10 Wheat. (U. S.) 192, 6 L. Ed. 300.

While instances where the will disposing of real estate in another state has been denied probate in the domicile state are few, and we find no Iowa cases upon this point, the question has been passed upon by courts of other jurisdictions. In the case

of Doe ex dem. Pritchard v. Henderson, 2 Penne. (Del.) 553, 563, 47 A. 376, 379, the court said:

"While the Maryland court had full jurisdiction to find that the alleged will, so far as it related to the testator's personal property and her lands in Maryland [domicile state], was procured by fraud and undue influence, and that she was not of sound and disposing mind and memory, it had no jurisdiction whatever to make a conclusive determination as to these facts *or any other facts* touching the validity or invalidity of the paper, so far as the same relates to the title to the land in Delaware." (Italics added.)

In In re Estate of Barrie, 331 Ill. App. 443, 447, 73 N. E. 2d 654, 656, where the question was as to the right of the county court to permit the removal of the original will in question from its files, the court said:

"The title to and disposition of real estate either by deed or will is governed by the law of the state where the land is situated. Mary E. Barrie owned real estate located in Iowa, and the disposition of this real estate is governed by the laws of that state. Any order denying that will admission to probate in Illinois does not affect the title of her real estate located in any other state."

See also McGehee v. McGehee, 152 Md. 661, 136 A. 905; McGehee v. McGehee, 189 N. C. 558, 127 S. E. 684.

Appellant places particular stress upon the case of Trotter v. Van Pelt, 144 Fla. 517, 522, 198 So. 215, 217, 131 A. L. R. 1018. The case is, in many respects, similar to the one at bar. In that case, testator was domiciled in Virginia and owned land in Florida. His will was denied probate in Virginia as an attested instrument, the Virginia court holding that, though properly executed, it had, because of certain changes and interlineations, made subsequent to its execution, been revoked under the laws of Virginia. It was admitted, however, as a holographic will. Thereafter it was filed for probate in Florida. Objections were filed setting up the Virginia judgment as a bar to the

Florida proceedings. The trial court upheld objectors and on appeal the judgment was reversed.

The court recognized and applied the general rule of lex loci rei sitae and held that the Virginia judgment did not operate extraterritorially and was not binding upon the Florida courts so far as the real estate in Florida was concerned. It said:

"If the courts of Florida are precluded from determining the status of the Triplett will as to real estate in Florida, then the lex loci rei sitae is controlled by the Virginia decisions. The right to contest a will of real estate is not local but is incidental to the parties, the realty, and the jurisdiction where the latter is situated. It follows that when a testator executes a will devising lands in two or more states, the courts in each state will construe it as to the lands located therein as if devised by separate wills." (Citing cases.)

The instant case and the cited case may be different as to the facts attending the revocation. In the instant case, we assume that the acts committed by testatrix and which constituted the revocation under the Illinois statute were done with intent to revoke, in view of such a finding by the Illinois court. In the cited case, the finding of the Virginia court upon this question does not appear.

We deem it to be immaterial to the deciding of this appeal whether the thing which constituted the revocation was by operation of law, the act done being incidental thereto (such as a marriage when the law makes same a revocation of a prior will) or whether the act was done for the express purpose of revoking, as assumed in the instant case. The basis advanced for denying the jurisdiction of the Iowa court is not the specific act of "canceling" but is the judgment of the Illinois court that the instrument was revoked.

As stated in 1 Page on Wills, section 533, page 999, "A will which has been revoked totally is of no legal effect", and if under the laws of the state the act done or the situation which arises constitutes a revocation, it is, so far as said state is concerned, of no legal effect. To hold that an act which constitutes a revocation in one state is a revocation in another state

where under the law the act does not constitute a revocation is contrary to the general rule, which is stated in 57 Am. Jur., Wills, section 493, to be, "where a statute prescribes the method and acts by which a will may be revoked, no acts other than those mentioned in the statute are to operate as a revocation, no matter how clearly appears the purpose of the testator to revoke his will and his belief that such purpose has been accomplished." See also 57 Am. Jur., Wills, section 455; Restatement of the Law, Conflict of Laws, section 250; Gay v. Gay, 60 Iowa 415, 14 N. W. 238, 46 Am. Rep. 78. That the acts held to be a revocation in Illinois do not constitute such in Iowa, see section 633.10, Code of 1946; Blackett v. Ziegler, 153 Iowa 344, 133 N. W. 901, 37 L. R. A., N. S., 291, Ann. Cas. 1913E 115; In re Will of Rutledge, 210 Iowa 1256, 232 N. W. 674.

Section 633.49, Code of 1946, provides:

"A last will and testament executed without this state, in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state, provided said last will and testament is in writing and subscribed by the testator."

This statute has not been before this court, so far as the writer of this opinion can find. It is clearly a modification of the common law and should not be extended to include matters not clearly included therein. It specifically deals with the formalities in the execution of the will, and nothing more. No question of execution is here involved. That the legislature might have waived the common-law rule as applicable to revocations as well as to the formal execution, as it has done, cannot be denied. However, the legislature has not seen fit to do so. See State ex rel. Ruef v. District Court, 34 Mont. 96, 85 P. 866, 6 L. R. A., N. S., 617, 623, 115 Am. St. Rep. 510, 9 Ann. Cas. 418. The statute is not applicable.

Assuming the instrument creates an equitable conversion of the realty into personalty, that fact is immaterial to

the question before this court since the question presupposes the existence of a formally valid will executed by a competent testator. See annotation 2 L. R. A., N. S., 408, 457; Restatement of the Law, Conflict of Laws, sections 209, 244 and 249; Norris v. Loyd, 183 Iowa 1056, 1061, 168 N. W. 557, 558, which states: "An equitable conversion is a legal fiction, and is simply anticipatory of an actual conversion. There could be no actual conversion without a transfer of the title, and there could be no legal transfer of the title, except in pursuance of Iowa Law."

We hold that the Illinois judgment denying probate to the will in question is not conclusive and binding upon the courts of this state in so far as the disposition of the Iowa real estate is concerned; that the objections filed to the petition do not constitute a basis for denying probate of the will and the appellant's motion to strike should have been sustained. Reversed and remanded for an order in accordance herewith.— Reversed and remanded.

OLIVER, BLISS, GARFIELD, and WENNERSTRUM, JJ., concur.

SMITH, J., and MANTZ, C. J., and HALE and MULRONEY, JJ., dissent.

SMITH, J. (dissenting)—I am unable to agree with the majority opinion. It perpetuates an anomalous confusing legal situation which our own statutes seem clearly designed to remove and which judicial thinking should seek a way to avoid. The importance of the question involved justifies, even requires, a statement of the grounds of dissent.

Appellant has litigated in the state of decedent's domicile the very issue it presents here, viz.: Is the instrument in question her will or did decedent die intestate? The Illinois court held there had been a revocation. In re Barrie's Will, 393 Ill. 111, 65 N. E. 2d 433. Unfortunately the method of revocation adopted by decedent does not comply with our revocation statute though recognized in Illinois.

I. Appellant claims (and the majority opinion holds) the Illinois decision does not render the question res adjudicata here because, as to real estate, at common law the "lex loci rei

sitae" (the law of the place where a thing is situated) governs as to "the forms and solemnities" necessary to give a will "its due attestation and effect," citing Story on Conflict of Laws, Eighth Ed., 652, and other texts; and because, since decedent owned Iowa land, the question whether she had effectively revoked the instrument can be relitigated here and must be determined under our laws relating to domestic wills.

No contention is or could be made that this would be true if her Iowa property was personalty only. 15 C. J. S., Conflict of Laws, section 18f. The proposition is based squarely on decedent's ownership of real estate in Iowa. The distinction is significant of the historical situation (now nonexistent) out of which it arose—the fact that wills devising real estate were originally solely cognizable by courts of law, while testaments bequeathing personal property were within the exclusive jurisdiction of the ecclesiastical courts. In re Goldsticker's Will, 192 N. Y. 35, 84 N. E. 581, 18 L. R. A., N. S., 99, 15 Ann. Cas. 66; annotation 60 Am. Dec. 360. See also Conklin v. Egerton's Admr., 21 Wend. (N. Y.) 430, 436; Ellis v. Davis, 109 U. S. 485, 495, 3 S. Ct. 327, 27 L. Ed. 1006. The requirements necessary to give the former instruments validity as conveyances of real estate naturally became considered subject to the common law "lex loci rei sitae," while those which only bequeathed personalty were subject to or followed the rule of testator's domicile, "mobilia sequuntur personam,"—movables (personalty) follow the person.

The courts and text writers who adhere to this ancient distinction overlook the profound effect of modern probate statutes that have entirely eliminated any old differences in formal requirements and solemnities as to mode of execution (and revocation) and probate procedure between "wills of personalty" and "wills of realty," as they were formerly referred to. We no longer speak of "wills of real estate" as something apart or different from "wills of personal property." The term "will" has come to include "testament." All must conform to the same statutory standards.

In 57 Am. Jur., Wills, section 938, the text writer says:

"At common law, although a will of personal and real estate

could be probated, such probate was not conclusive as to the real estate. This rule was followed at an early period in some of our states, and in some later cases, but in most jurisdictions the distinction * * * is no longer recognized, and the probate of a will is equally conclusive as regards each class of property."

Even some of the text writers cited in the majority opinion as supporting the common-law rule indicate its subjection to statutory influence and modification. In 4 Page on Wills 688, section 1633: "At common law, *if not modified by statute,* the general rule * * * is that the validity, operation, effect, etc., of a will by which real property is devised is determined by the law of the place where the land is situated." See also subsequent language to the same effect on page 690, section 1634. And on page 692 (section 1635) the same author points out the obvious objections to the common-law rule and adds: "For these reasons the statutes of many states have modified the common-law rule * * * and have made it analogous to the rule on the subject of testaments of personalty by providing *that if the will of decedent is valid by the law of the jurisdiction where he was domiciled * * * it shall be valid to pass land anywhere.*" (All italics supplied.)

The text in 68 C. J., Wills, 626, section 251, after announcing the common-law rule, adds:

"Where a statute has been enacted allowing wills executed in a foreign state or country to take effect or be probated if they are valid under the laws of such foreign state or country, or have been probated there, *the validity of a will is to be tested by the law of the place of execution, as to property within the state in which such statute is in force, even though the will was not executed in conformity with the law of such state.*" (Italics supplied.)

See also later text 68 C. J., Wills, 1242, section 1100, where the lex loci rei sitae is said to apply "in the absence of a controlling statute," and *not to apply in other states under statutes.* Note 96, page 1243.

In 11 Am. Jur., Conflict of Laws, section 172, after stating the common-law rule "in the absence of a local statute to the

contrary" the author says it is competent for the legislature to change the rule and that frequently this is done indirectly "by the passage of statutes which permit the recording of authenticated copies of foreign wills· admitted to probate in the foreign jurisdiction. Whether such a statute has the effect of changing the common-law rule * * * depends, of course, upon the terms of the statute", citing annotation 2 L. R. A., N. S., 426. See also annotations 2 L. R. A., N. S., 408, 424 et seq. and 6 L. R. A., N. S., 617.

II.   Our own statutes seem definitely to have done away with the rule of "lex loci" (or "lex sitae" as it is sometimes referred to) in determining whether a foreign decedent has died testate or intestate, or whether a given instrument is or is not his will.

It should be emphasized the rule is still valid in ascertaining what *effect* is to be given the instrument *once it has been found to be a will*. But we are not concerned here with the interpretation or construction or legal effect of the document in question. Before that question is reached it must first be established that it is in fact the will of Mary E. Barrie, which fact the Illinois courts have denied. Many of the cases cited by text writers in support of the rule relate to matters of *construction* and *legal effect* and not to the method of execution. We are concerned here only with the rule as applied to the "forms and solemnities" required in the execution and revocation of wills. The probate of a will determines nothing but what relates to factum. Home for the Aged v. Bantz, 106 Md. 147, 66 A. 701, 703, citing Ramsey v. Welby, 63 Md. 584, 586.

Our general statute of course grants the district court of each county "original and exclusive jurisdiction" to probate the wills not only of residents of the state residing in the county, but also "of nonresidents of the state who die leaving property within the county subject to administration." Section 604.3, Code of 1946. And there are also general statutes prescribing the necessary formalities of witnessing, executing and revoking.

But these statutes must be read with others. Section 633.33 requires ex parte probate of a foreign will (that has been probated in a foreign state) "on the production of a copy thereof

and of the original record of probate" duly authenticated, all without regard to the manner of its execution. And section 633.49 expressly provides:

"A last will and testament executed without this state, in the mode prescribed by the law, either of the place where executed or of the testator's domicile, shall be deemed to be legally executed, and shall be of the same force and effect as if executed in the mode prescribed by the laws of this state, provided said last will and testament is in writing and subscribed by the testator."

None of our statutes differentiates between real and personal property. Whatever the form of property, the same formalities for executing and revoking are required in the case of domestic wills; and there is the same recognition of the validity of a foreign will probated or executed pursuant to the law of testator's domicile whether real or personal property is or is not affected.

I find no cases construing or citing Code section 633.49, but there are decisions of other states as to the effect of comparable ones. Maryland has one (section 307) practically identical. It is discussed at length in Lindsay v. Wilson, 103 Md. 252, 267, 63 A. 566, 567, 2 L. R. A., N. S., 408. In speaking of the Maryland statute as it stood before the enactment of section 307, that opinion says:

"We cannot understand, however, how any distinction can be made under this statute between real and personal property, since the Act of 1884. The same formalities were required by that Act in the execution of wills of personal property as in those of real estate * * *."

Then referring to the effect of the subsequent law (equivalent in legal meaning to our section 633.49) the Maryland court says:

"Inasmuch as the Legislature provided in sec. 307, that 'Every will, and other testamentary instrument, made out of the State shall be held to be valid,' if executed as therein stated" (that is "according to the forms required by the law

of the place where it was executed") "it cannot be said that some wills so made shall be valid, and others so made shall be invalid, without ignoring the express language of the statute."

See also Gailey v. Brown, 169 Wis. 444, 171 N. W. 945, hereinafter discussed.

In the face of our statutes it is difficult to see how we can hold the lex loci rei sitae determines the right of probate in this state of a document offered as the foreign will of a testator owning real estate in Iowa. By the express language of section 633.49 the law of his domicile or of the place where the will was executed must govern as to the manner of its execution. And where, in the jurisdiction of his domicile, probate has been granted or denied in proceedings in solemn form, we should hold the status of the instrument to be res adjudicata.

But one Iowa case is cited by appellant. It does not sustain the proposition contended for. See In re Will of Longshore, 188 Iowa 743, 751, 176 N. W. 902, 905. That case concerned a purported will of an Iowa resident. It had been probated by original proceedings in Nebraska where decedent owned land. It was then sought to be probated in Iowa as a foreign will under what is now Code section 633.33. We held this could not be done, saying: "Under authority and reason * * * we hold that the place of original probate is the place of domicile." The opinion points out the distinction between probate proceedings in the jurisdiction of testator's domicile and original proceedings elsewhere, holding the latter to be in rem and affecting only the property and rights in property in the jurisdiction where the proceedings were had. Lynch v. Miller, 54 Iowa 516, 6 N. W. 740, and Otto v. Doty, 61 Iowa 23, 25, 15 N. W. 578, cite the common-law rule but were decided prior to our statute that is now section 633.49, and do not even discuss the statutes then in force.

The authorities from other jurisdictions cited by appellant and the majority opinion are not controlling here in the face of our statutes which clearly require application of the principle of res judicata, where probate has been allowed or denied in the jurisdiction of testator's domicile. There is language in In re Estate of Barrie, 331 Ill. App. 443, 447, 73 N. E. 2d

446

654, 656, which tends to support appellant's argument, but it is clear dictum by the Illinois (intermediate) Appellate Court, in releasing to appellant for its purpose here, the possession of the document presented here which the Supreme Court of Illinois had already held not to be a will. See In re Will of Barrie, 393 Ill. 111, 65 N. E. 2d 433.

The McGehee v. McGehee cases (152 Md. 661, 136 A. 905, and 189 N. C. 558, 127 S. E. 684) are cited. They involved a fact situation somewhat analogous to the one here but the question we are discussing was apparently never raised either in North Carolina or Maryland. No statutes are shown similar to our own. Decedent, a resident of South Carolina, left a will with but two witnesses, whereas three were required in that state. Probate was therefore denied in South Carolina and the estate there administered as intestate property. The will was later probated in North Carolina and ancillary administration taken out in Maryland. But no question of prior adjudication (by reason of the denial of probate in South Carolina) was urged in these other states. All parties seem to have acquiesced in the common-law doctrine. No statutes comparable to ours are mentioned.

Trotter v. Van Pelt, 144 Fla. 517, 198 So. 215, 131 A. L. R. 1018, is also cited. It concerned a will (with codicils) that had been admitted to probate in Virginia as testator's holographic *unattested* will. See Triplett's Executor v. Triplett, 161 Va. 906, 172 S. E. 162. The Virginia court had denied probate of the main will as an *attested* holographic will because of unattested alterations made in it by testator.

The Florida court held the Virginia decision as to attestation did not render the question res adjudicata in Florida, that the "full faith and credit" provision of the Constitution of the United States did not apply, that the lex loci rei sitae controlled and that the will was effective to devise Florida real estate.

These cases merely repeat the common-law doctrine and refer to no such statutory provisions as ours.

III. It is true of course that Code section 633.49 refers to *execution* and not directly to *revocation*; and we have here a document, held in Illinois to be nontestamentary, because of

*revocation* and not because of any defect in original *execution*. In other words, we have an instrument not merely "executed" but also *revoked* "without this state, in the mode prescribed by the law \* \* \* of the testator's domicile."

But revocation is merely the converse of execution. The power to execute implies the power to revoke. A will can no longer be said to be *executed* after it has been *revoked*. Whether an instrument is a will is determined not only by the manner of its execution but also by the manner of its attempted revocation. Both acts are a part of the testamentary process. It is unthinkable that our legislature intended to require recognition of the laws of another jurisdiction in the matter of one and not of the other.

In Gailey v. Brown, supra, 169 Wis. 444, 450, 171 N. W. 945, 947, the Wisconsin court was considering statutes analogous to ours which directly referred only to the recognition of wills *proved* in another state, and not to the rejection of those whose probate had been *refused because of revocation under the laws of the foreign jurisdiction*. After holding these statutes had modified the rules of the common law and had committed to the courts of testator's domicile the primary determination "as to the form and mode of the execution of foreign wills devising real estate in Wisconsin," that court said:

"The determination of these questions legally and necessarily includes the inquiries by such foreign courts whether or not testator made a valid will and, *if so, whether it had been legally revoked* before his death; and such judgment of the courts in sister states is to be accepted here *as fixing the status of the instrument propounded as a will* \* \* \*. \* \* \* it results from this statutory modification of the common law that the question whether or not a purported will has been revoked is necessarily an inquiry in such foreign probate proceeding and is committed to the court of testator's domicile for determination under the law of his residence." (Italics supplied.)

The purpose of both Code sections 633.33 and 633.49 must have been to abolish or minimize confusion and conflict between states in the matter of handling wills. Foreign ownership of property has become common. Owners of property in different

jurisdictions should not be required in making and revoking their wills to do more than comply with the law of their own domiciles, or with the law of the jurisdiction where the instrument is drawn or revoked. As said by one author:

"If a testator has any knowledge of the formalities of executing a will his knowledge is generally confined to the law of his own domicile, or to the law of the place where he makes his will, if he relies upon local advice * * *. It may not even be possible to obtain legal advice as to the formalities necessary, by the laws of some remote country, to the validity of a devise of land situate there." 4 Page on Wills, Conflict of Laws, 692, section 1635.

IV. I conclude we are required under Code section 633.49, in connection with other statutes I have cited, to determine the status of the offered instrument *by the law of decedent's domicile.* If there had been no determination of the question in Illinois the issue would of course have to be adjudicated in Iowa. The Iowa court, in that event, would have to construe and apply the Illinois statutes on execution and revocation and decide *by that standard* whether the document was the will of decedent.

But that issue has been adjudicated. The Illinois court has spoken. The judgment of a probate court, within the scope of its jurisdiction, is conclusive upon the parties, just as is the judgment of any other court. 50 C. J. S., Judgments, section 605; 30 Am. Jur., Judgments, section 163; 68 C. J., Wills, 1240, 1241.

The fundamental error in the majority opinion is in assuming that the validity of an instrument offered as a *foreign* will is to be determined by the same standard that would determine its status if offered as a *domestic* will. But the Iowa statutes establish a different standard without any differentiation between real and personal property. The lex loci rei sitae is in that respect changed. Code section 633.49 is just as effective in its field as are our general statutes prescribing the forms and solemnities for the execution and revocation of domestic wills.

There is nothing sacrosanct about the "lex loci" any more than about any other common-law rule. Our statute provides:

"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice." Code of 1946, section 4.2.

Undoubtedly our will statutes are in derogation of the common law in many respects, not least of which is the abolition of all differences between wills and testaments as regards the method of their execution. Code section 633.49 is clearly in derogation of lex loci rei sitae as to *execution* of foreign wills. Its purpose is obvious. The majority opinion would construe it narrowly and technically by limiting the word "executed" to its strict and more common meaning—the performance of the acts by which the instrument is brought into being, specifically the signing and witnessing of it according to statutory requirements.

But ambiguity, justifying interpretation of a statute is not simply that arising from the meaning of particular words. It includes such as may arise in respect of the general scope and meaning of the statute when all its provisions are examined. 50 Am. Jur., Statutes, section 226, citing Coosaw Min. Co. v. South Carolina, 144 U. S. 550, 563, 12 S. Ct. 689, 692, 36 L. Ed. 537, 542.

In a narrow sense a will is "executed" when the potential testator signs it and it is duly witnessed according to statutory requirements. But a will is ambulatory and its final character is fixed only when its maker dies. It has been appropriately remarked that a will "is, in effect, reiterated as his [testator's] testament at each moment of his life after its execution, including the last moment, and is governed by the law existing at the time when it takes effect, upon the testator's death." In re Will of Kopmeier, 113 Wis. 233, 239, 89 N. W. 134, 136.

It is not a strained construction therefore to say that anything done to the instrument by the testator affecting its status as a will is to be considered in determining whether he has finally *executed* it. And when our statute speaks of a will "executed without this state, in the mode prescribed by the law"

of testator's domicile and provides that the instrument "shall be deemed to be legally *executed*, and shall be of the same force and effect as if *executed* in the mode prescribed by the laws of this state," we should construe it as requiring us to recognize the validity of a revocation by the testator, consummated in a mode recognized by the law of his domicile. Any other construction would render the statute impotent as to an important part of the very mischief it was plainly designed to remedy.

With apologies to the court and the profession for the (perhaps unnecessary) length of this dissent, I would affirm the decision of the trial court.

MANTZ, C. J., and HALE and MULRONEY, JJ., join in this dissent.