EMMA BREWSTER, Guardian, Appellant, v. GEORGE F. BREWSTER, Appellee.

**APPEAL AND ERROR: Review—Scope and Extent—Demurrer to Plaintiff's Evidence.** A defendant in an equitable action who successfully demurs to plaintiff's evidence—in other words, moves for a dismissal—must take notice that he will be foreclosed from further hearing if the action of the lower court is overturned on de novo hearing on appeal.

**DEEDS: Validity—Mental Incompetency.** Proof of extreme age is not, in and of itself, sufficient to establish mental incompetency to execute deeds; but such showing, aided by expert and laymen opinion of incompetency, and by a series of circumstances and a showing of physical and mental condition persuasively pointing in the same direction, may clearly enable the appellate court to say that the trial court was in error in dismissing an action without testimony on the part of defendant.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

JUNE 23, 1922.

REHEARING DENIED NOVEMBER 21, 1922.

ACTION in equity by the guardian of Lewis Brewster, a person of unsound mind, for the cancellation of a deed executed

by the ward prior to the appointment of the guardian. Upon the close of plaintiff's evidence the court sustained defendant's motion to dismiss plaintiff's petition and judgment was entered in conformity to said ruling. Plaintiff appeals.—*Reversed.*

*G. T. Wellman* and *Herrick & Herrick,* for appellant.

*T. E. Diamond, Klay & Klay,* and *Van Oosterhout & Kolyn,* for appellee.

DE GRAFF, J.—On March 24, 1920 Lewis Brewster conveyed by deed a quarter section of Iowa land to his oldest son George Brewster defendant and appellee herein. Plaintiff alleges that the grantor at said time was mentally incompe-

1. APPEAL AND ERROR: review: scope and extent: demurrer to plaintiff's evidence.

tent to execute the conveyance and was subject to undue influence. Contrary to the ordinary and usual procedure in a case of this character the trial court upon the conclusion of plaintiff's evidence sustained the defendant's motion to dismiss plaintiff's cause of action. The record therefore contains no testimony on behalf of the ·defendant, and the question presented is whether the evidence introduced sustains the allegations of the petition? This cause is triable *de novo* in this court, and it cannot be tried in any other manner. *Blough v. Van Hoorebeke,* 48 Iowa 40.

The abstract filed is presumed to contain all of the evidence before the trial court and the record presented will be deemed true, if not controverted. The facts to which the testimony of the several witnesses refer are not in dispute.

The testimony shows conclusively that at the time of the trial the grantor Lewis Brewster was under permanent guardianship; that his wife Emma B. Brewster was appointed a tem-

2. DEEDS: validity: mental incompetency.

porary guardian of the estate of Lewis Brewster March 30, 1920, six days subsequent to the execution of the deed in question. The grantor was 81 years of age in the month of January in the year 1920. We see no purpose in setting out in detail the facts and circumstances which causes this court to reverse the lower court. The record itself must be read in cases of this character to under-.

stand clearly the strength of mind in him whose act is attempted to be impeached.

We recognize that there is an infinite diversity of minds, both sound and unsound, and the law does not fix a line of demarcation nor does it declare that on one side is normalcy and on the other abnormalcy.

The cancellation of a solemn instrument invokes an extraordinary remedy and courts are not inclined to grant such relief except on evidence that is clear, satisfactory and convincing. Old age with its attending physical infirmities and feeble intellect is not in itself sufficient, nor does any presumption arise from this fact alone that undue influence has been exerted by him against whom complaint is lodged, nor does it presumptively make invalid an instrument sought to be set aside. In order to establish either undue influence or mental incapacity the evidence must prove something more than old age and the eccentricities which are oftentimes incident thereto. Had the instant case been triable to a jury, wherein the validity of a will was in question, would the trial court have been warranted under the evidence in directing a verdict upon the conclusion of plaintiff's testimony? We think not.

Adjudicated cases in this or other jurisdictions are of little moment and afford but weak precedents. Each case is bottomed upon its own facts.

The grantor in his younger years was a man of a virile type. He was a man of positive convictions. He was the keeper of his own conscience. At the time of the execution of the deed in question he was but the shadow of his former self, physically and mentally. Members of his family and his friends and neighbors testify to many incidents of his later life and these incidents point in but one direction. They furthermore testify that on the date when the deed was executed he was unsound in mind. Dr. Donohoe after a personal study of Lewis Brewster gave to the court his expert and unqualified opinion that the grantor was mentally unsound, and that his mental disease had been progressive. Is a court privileged to throw aside the conclusions of expert and laymen, if the facts upon which they are based, are true? *Galt v. Provan*, 108 Iowa 561.

The deed in question was prepared by an attorney who was

not the regular attorney of the grantor, and he had never trans-
acted any business for him. The grantor was brought to the
office of the scrivener and attorney by the grantee, the son,
with whom he had been living for several weeks and it was upon
the last day of that visit that the deed was executed. The wife
of the grantor was not consulted nor was she requested to sign
the deed. The grantee paid for its execution and kept the mat-
ter a secret.

The grantor's wife who had lived with him for 30 years
was in the best position to detail the changes in her husband's
mental and physical life and deportment, and it may not be
said that her interest alone would cause her to swerve from the
pathway of truth since the deed in question affected in no wise
her property rights. She is corroborated in many of her recitals
tending to prove the mental incapacity of the husband.

On one occasion about nine months before the signing of
the deed he went to the lumberyard and made inquiry of the
manager as to how much money he had there. "I want to know
how much money I have got here." Mr. Manning replied, "Do
you mean that you want to know how much your coal bill is?"
Brewster says, "No, I want to know how much money I have in
here." Upon being told he was mistaken and that he had no
money there, Brewster replied, "That's mighty funny, they
told me to come down here and see how much money I had."
He left in an angry mood. This is a little incident but it is one
of many that clearly indicates that his mental operations were
not tracking.

A few months after the deed was made and delivered
Brewster denied that he deeded the farm to George. He had the
idea that he had leased the farm, and this was the explanation
that he gave to his wife and also to Dr. Donohoe. Brewster had
transacted no business for two years, except placing his name
on a $3,000 note for the benefit of his son Archie about a month
before the deed was signed. This son had returned from service
in the army with the loss of one eye. Shortly after his return
he engaged in business in Estherville, and the note in question
represented a loan from the bank. Brewster did not read the
note and the wife testifies that she did not hear the banker ex-

plain it to him when it was brought up to the house for him to sign.

It may also be stated that Mrs. Brewster never had any trouble with any of the six children of the Brewster family, three of whom including the defendant were by his first marriage, and three were children of the second marriage. Brewster had never declared his intention to deed this farm to George, nor had he ever talked over with his wife the advisability of making the deed.

True there is no direct evidence in this record that establishes undue influence, and we would not reverse on this ground alone. However when an aged and infirm parent reposes confidence and trust in a grown child a court of equity will critically scan the circumstances and must be satisfied of the *bona fides* of the transaction. Nothing in Brewster's life had been unusual. He had been a hardworking and thrifty citizen. At the time in question, however, his actions were strange and even ridiculous in many ways. He was unable to take care of himself, became confused, misunderstood directions, and did not understand the environment and things with which he was formerly most intimately acquainted. The $50 which George paid him as part of the annual rental reserved for the grantor's life was carried by the senior Brewster in his hand and when he arrived home he placed it on the table without comment. He often asked for money when he had no use for it and would lose it or leave it around the house.

Dr. Donohoe testified that the old gentleman could not reason; that he did not understand the nature of the transaction in relation to the deed; that his conversations and his answers "were certainly confused."

It was not necessary for the plaintiff to establish complete mental incapacity on the part of the grantor. The court is entitled to take into consideration his physical condition; the adequacy of consideration; whether or not the conveyance was improvident; the relation of trust and confidence between the parties to the conveyance, and the weakness of mind of the grantor as judged by his other acts within a reasonable time prior and subsequent to the act sought to be impeached.

In brief, the determination of the absence or presence of

sufficient mental capacity on the part of the grantor must be based upon the combined weight of all of the evidence. It is composite, and a court should consider and determine the ultimate proposition from every angle presented by the evidence. If all of the evidence and the reasonable inferences therefrom lead to the conclusion that the grantor was incompetent, and that he lacked sufficient reason to understand, or appreciate his act or the reasonableness and the consequences of his act, then it may ·be said that such person is mentally incompetent to do the thing against which complaint is lodged. *Gernhart v. Gernhart,* 194 Iowa 487.

We are not privileged to know anything concerning the explanation by the defendant or his witnesses, or the facts and circumstances surrounding the execution of the deed from his viewpoint by reason of the motion made by him at the close of plaintiff's testimony. We are not in a position to speculate what the defendant's evidence might tend to prove. The decision and the judgment entered must be predicated. upon the plaintiff's showing and the defendant under the well established rule of equity is now foreclosed. *Shetler v. Stewart,* 133 Iowa 320 is not controlling on this point of practice. Defendant had his day in court and was satisfied to rest his case on the plaintiff's showing.

The cause is reversed with directions to the trial court to enter a decree setting aside the deed in question.—*Reversed.*

STEVENS, C. J., WEAVER and PRESTON, JJ., concur.