Jane W. HARRISON, as Administratrix and as Ancillary Administratrix of the Estate of Fred E. Ware, Deceased, and Jane W. Harrison, Individually, Plaintiffs,

v.

CITY NATIONAL BANK OF CLINTON, IOWA, Defendant.

Civ. No. 2-484.

United States District Court
S. D. Iowa,
Davenport Division.

Oct. 11, 1962.

364

Harlan J. Thoma, Sherwin J. Markman and Heinrich C. Taylor, Jr., (of Brody, Parker, Roberts, Thoma & Harris), Des Moines, Iowa, for plaintiffs.

Edward C. Halbach and David F. Halbach (of Halbach & Halbach) and Glenn T. Cousins, Clinton, Iowa, for defendant.

STEPHENSON, Chief Judge.

This matter was tried to the Court without a jury. Jurisdiction is based upon diversity. Plaintiff is a citizen of California and defendant, a national bank, has its principal place of business in Iowa. The matter in controversy exceeds the sum of $10,000 exclusive of interest and costs.

In 1914 one Edward M. Ware transferred to the Peoples Trust & Savings Bank of Clinton, Iowa, as trustee (succeeded by the defendant, City National Bank of Clinton, Iowa) certain properties to be held by it in trust for the use and benefit of said Edward M. Ware during his lifetime, and upon his death to continue for the benefit of his children, Fred E. Ware and Kate Ware (later his daughter was known as Kate Ware Hiecke and then Jane M. Hiecke and now is known as Jane W. Harrison, plaintiff herein). Following the death of Edward M. Ware, and pursuant to the terms of the trust, the income therefrom was paid equally to Fred E. Ware and the plaintiff. When said children each reached the age of 30, they were each to receive one-half of the trust corpus.

Fred E. Ware was married in the early 1930's to Ann C. Ware. This marriage lasted until their deaths in 1960.

In April, 1938, just prior to reaching the age of 30, Jane M. Hiecke and Fred E. Ware transferred their entire interest in the trust established for them by their father to the defendant as trustee for a period of 15 years. The defendant was to pay both the plaintiff and Fred E. Ware $400 per month if there was sufficient income to warrant it. At the expiration of the 15 year period the principal of the trust, plus any accumulated unpaid income, was to be distributed to the plaintiff and Fred E. Ware in equal shares. The trustee also had the discretion to pay either party any additional sum it deemed necessary for their comfort, maintenance and support, provided the payment of such additional sum did not invade the trust corpus.

In 1948, Fred E. Ware executed a trust agreement wherein he transferred all of his interest in the 1938 trust (which was to terminate in 1953) to the defendant as trustee, to be held by it in trust.

The 1948 agreement provided in part as follows:

"Par. 4. The trustee shall pay to the trustor, Fred E. Ware, so long as he shall live, the sum of $400.00 each month if there is sufficient income in said trust at the time said payments become due to warrant the same being made, and may pay to said trustor such further sums from time to time as the trustee may deem necessary or advisable for the comfort and support of the trustor or for any other purpose, but under no condition shall the trustee pay to any beneficiary hereunder any part of the principal of said trust estate.

"Upon the decease of the trustor, the trustee shall thereafter pay the net income of said trust estate to Ann C. Ware, wife of the trustor, if surviving, so long as she shall live, and upon her decease shall pay, transfer, and assign the entire trust estate as the same shall then be to whomsoever she may, by her last will and testament, designate and in default of such designation, then to the administrator of her estate, but if the said Ann C. Ware shall predecease the trustor, then in that event, upon the death of the said trustor, the trustee shall pay, transfer and assign the entire trust estate as the same shall then be to whomsoever he may, by his last will and testament, designate and in default of such designation, then to the administrator of his estate."

The 1948 agreement further provided it was irrevocable. It also contained a "spendthrift" provision in that the income and principal could not be assigned or alienated by the beneficiaries and was not subject to their debts.

In 1953, the 1938 trust terminated and the assets comprising Fred E. Ware's interest in it were transferred to the 1948 trust. Thereafter, on April 20, 1959, Fred E. Ware and Ann C. Ware executed a document entitled "SUPPLEMENTAL TRUST AGREEMENT" [1]

1. "SUPPLEMENTAL TRUST AGREEMENT

Agreement, entered into this 20th day of April, 1959, by and between Fred E. Ware and Ann C. Ware of Hollywood, California, wife of trustor, parties of the first part, and The City National Bank of Clinton, Iowa, hereinafter called the Trustee, party of the second part, witnesseth:

Whereas under date of February 11, 1948, the said Fred E. Ware did enter into a certain Trust Agreement with The City National Bank of Clinton, Iowa, as trustee, and

Whereas said Fred E. Ware and his wife, Ann C. Ware, are the sole beneficiaries of said Trust and said trust indenture reserved to the survivor of them the right to designate the right of designation of the beneficiaries of the trust estate after the death of the survivor of them, and

Whereas the first parties now desire to extend said trust and provide for further disposition of the trust estate beyond the time now established by said trust indenture and to continue said trust for certain purposes:

Now, therefore, first parties, for and in consideration of the sum of one dollar ($1.00) to them paid by the Trustee, receipt of which is hereby acknowledged, and in consideration of other good and valuable considerations, hereby extend and continue said trust heretofore created beyond the lives of the first parties, upon the terms and conditions hereinafter set forth. And the trustee hereby agrees to the extension of the duration of the said trust as herein provided and agree that it will continue to faithfully execute the trust according to the best of its knowledge and ability, it being understood that the trustee shall have in the future all the powers and authority given to it under the terms of said original trust agreement.

(1) The Trustee shall continue to have and to hold all of the assets of said trust under said trust agreement dated February 11, 1948, together with all accumulations of income, from and after the death of the survivor of the first parties, and the first parties do for the purposes of this trust, give, grant, convey, assign and set over to the trustee all the said remaining assets of said trust, relinquishing the power and right which we or either of us may have to designate by last will and testament, the disposal of the said trust estate, or by other means other than this instrument.

wherein they purported to modify the 1948 trust by providing that after the death of the survivor of Fred and Ann Ware, if Elizabeth A. White (Fred E. Ware's mother) survived them, the trust income should be paid to said Elizabeth A. White and that upon her death the net income should be distributed "for such charitable purposes as said trustee may in its sole discretion determine to be to the best interest and advancement of the community and the general welfare of the people of the City of Clinton, Iowa." (Trustee also had sole discretion to distribute any and all principal of the trust estate for such charitable purposes). The 1959 instrument was witnessed as is required for the proper exe-

(2) After the death of the survivor of the first parties, the trustee shall pay out of income, all expenses of last illness, funeral and burial of the survivor of the first parties.

(3) After the death of the survivor of the first parties, the trustee shall, if Elizabeth A. White survives, pay to her or for her benefit, so much of the income of the trust as, in the sole discretion of the trustee, is adequate for her care, comfort and support, and upon her decease, pay the costs of her funeral if her estate is not sufficient to provide for the same; all additional income not so used shall be accumulated until after her death.

(4) From and after the death of the survivor of the first parties, and the death of Elizabeth A. White, the trustee shall continue to hold said trust estate and distribute substantially all the net income thereof for such charitable purposes as said trustee may in its sole discretion determine to be to the best interest and advancement of the community and the general welfare of the people of the City of Clinton, Iowa. Such distribution may be by donation to institutions of charitable purposes or by direct use of said funds for charitable purposes. The trustee may in its sole discretion also distribute, at such time and in such manner as it may determine, any and all of the principal of the trust estate to such charitable institutions or for such charitable purposes. And if for any legal reason requiring the termination of this trust within any certain period of time, the trustee shall make such distribution so as not to invalidate this trust.

(5) The powers and provisions of said trust agreement of February 11, 1948, as contained in paragraph 2 thereof is confirmed, as included in the provisions of this extension agreement of the supplemental indenture.

(6) The Trustee is hereby further empowered to employ such legal counsel as it may deem necessary in connection with the business of the trust, and requests that the trustee employ Glenn T. Cousins, attorney, of Clinton, Iowa, in such capacity.

(7) The trustee shall receive a reasonable compensation for its services to be fixed by itself, and paid annually, and shall be entitled to reimbursement for expenses in administering and carrying out the terms of this trust.

(8) The parties do hereby confirm the trust established by said Trust Agreement of February 11, 1948, as extended by this Supplemental Agreement.

Signed at Clinton, Iowa on the date above.

Witnesses:

/s/ Miss Kathryn M. Vulich

/s/ Robert A. Soenksen

/s/ Fred E. Ware

/s/ Ann C. Ware

First Parties

THE CITY NATIONAL BANK OF CLINTON, IOWA.

(Corporate Seal)

By /s/ Bruce Townsend

President

/s/ Robert J. White

Cashier"

cution of wills in both California and Iowa.[2]

Ann C. Ware died June 5, 1960, and Fred E. Ware died on June 10, 1960. They never had any children. Elizabeth A. White had died in 1959 subsequent to the execution of the 1959 instrument. The estate of Fred E. Ware was opened in California and plaintiff was appointed administratrix. She was also appointed ancillary administratrix by the District Court of the State of Iowa, in and for Clinton County.

Individually and as administratrix and ancillary administratrix, plaintiff made demand on defendant for distribution of the 1948 trust corpus. The defendant expressly refused to do so, and thereafter this action was instituted. Plaintiff contends she is entitled to all of the assets comprising the 1948 trust alleged by plaintiff to have a fair market value in excess of $1,500,000.

Plaintiff contends she is entitled to a distribution of all of the assets comprising the 1948 trust for the following reasons:

1. By the 1948 trust, Fred E. Ware created contingent, beneficial and remainder interests in the next of kin and heirs of himself and his wife, without the consent of whom, the 1948 trust could not be amended, modified or terminated to their prejudice except by the valid last will and testament of the survivor of Fred E. and Ann C. Ware.

2. The 1948 trust created by Fred E. Ware, a confirmed alcoholic, could not be amended, modified or terminated by him, even with the consent of all beneficiaries while such alcoholic condition continued to exist.

3. The 1959 instrument was not intended to be and did not constitute the Last Will and Testament of Fred E. Ware and Ann C. Ware.

4. The 1959 instrument is invalid because Fred E. Ware was legally incompetent to execute it; because its execution resulted from undue influence; because its execution was obtained by economic duress and over-reaching by the defendant; and that said 1959 instrument was executed as a result of the confidence reposed by Fred E. Ware in his Fiduciary, the defendant, and therefore the burden is cast upon the defendant to establish by clear, satisfactory and convincing evidence that it was executed by the cestui, Fred E. Ware with freedom, intelligence and full knowledge of all the facts.

The defendant contends that the 1948 trust could be amended by Fred E. and Ann C. Ware; that the 1959 instrument is a valid and effective amendment to the 1948 trust agreement. In the alternative that the 1959 instrument was a valid testamentary disposition of the trust estate.

Defendant contends the subject 1959 instrument is a valid testamentary disposition. Since the 1948 trust provided that the trust corpus could be disposed of by the last will and testament of Fred E. Ware, defendant's contention in this regard should be examined first. The parties have stipulated that aside from this 1959 instrument, Fred E. Ware died leaving no other instrument testamentary in form and character. Under the Erie rule, the Court must follow the Iowa conflict of laws rule. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. In determining whether there exists a valid will as respects real property Iowa law appears to be in accord with the general rule that the law of the situs of the realty is controlling and not that of the testator's residence or domicile. In re Estate of Barrie, 1949, 240 Iowa 431, 35 N.W.2d 658, 9 A.L.R.2d 1399, cert. denied, Hodge v. First Presbyterian Church, etc., 338 U.S. 815, 70 S.Ct. 55, 94 L.Ed. 493; Olson v. Weber, 1922, 194 Iowa 512, 187 N.W. 465, 27 A.L.R. 1370. The general rule is just the opposite with respect to personal property. See 94 C.J.S. Wills § 150, page 934. Iowa apparently follows this distinction. See

2. Cal.Prob.Code, § 50(4); Iowa Code, § 633.7 (1962).

Jackman v. Herrick, 1917, 178 Iowa 1374, 161 N.W. 97; In re Estate of Barrie, 1949, 240 Iowa 431, 35 N.W.2d 658, 9 A.L.R.2d 1399 (dissenting opinion), cert. denied, 338 U.S. 815, 70 S.Ct. 55, 94 L.Ed. 493. Fred E. Ware being a domiciliary of California and the trust comprising entirely personal property, California law is controlling in determining whether or not the 1959 instrument can be given effect as the last will and testament of Fred E. Ware.

█ █ It is fundamental that all testamentary instruments must be executed with testamentary intent. In re Tillman's Estate, 1955, 136 Cal.App.2d 313, 288 P.2d 892; In re Taylor's Estate, 1953, 119 Cal.App.2d 574, 259 P.2d 1014. "The term testamentary intent can only mean that the testator's frame of mind or intent is that the instrument or disposition of property which he makes shall pass no interest in the property until his death and that the act or instrument shall take effect only upon his death." 1 Page on Wills § 5.6 at 174 (Bowe-Parker Revision 1960). Estate of Sargavak, 1950, 35 Cal.2d 93, 216 P.2d 850, 21 A.L.R.2d 307; In re Stickney's Estate, 1951, 101 Cal.App.2d 572, 225 P.2d 649. It is therefore necessary that before an instrument can operate as a testamentary disposition it must be revocable until the maker's death. It is thus axiomatic that the instrument pass no interest during the life of the testator.

█ Applying these standards to the 1959 instrument it is apparent that the defendant's contention that said instrument is the valid last will and testament of Fred E. Ware cannot be sustained.[3] Subject instrument is entitled "Supplemental Trust Agreement"; it expresses the desire of Fred and Ann Ware to extend the 1948 trust and provides "first parties * * * hereby extend and continue said trust"; said parties relinquish their power and right "to designate by last will and testament, the disposal of the trust estate". The court finds the intent of Fred E. Ware and Ann C. Ware in executing subject instrument was not to constitute the same as their Last Will and Testament; rather it was to amend an existing trust instrument and thereby create present interests which were irrevocable. The 1959 instrument was an amendment and supplement to the 1948 trust.[4]

█ Attention will next be directed to the question of whether or not the 1948 trust could be amended. Aside from the question of incapacity, it is clear that the trust could be amended by Fred E. Ware and his wife if they constituted the settlor and the sole beneficiaries of the trust. The rule is stated in Restatement, Second, Trusts § 338 as follows:

"Consent of Beneficiaries and Settlor

"(1) If the settlor and all of the beneficiaries of a trust consent and none of them is under an incapacity, they can compel the termination or modification of the trust, although the purposes of the trust have not been accomplished.

"(2) Although one or more of the beneficiaries of a trust do not consent to its modification or termination or are under an incapacity, the other beneficiaries with the consent of the settlor can compel a modification or a partial termination of the trust if the interests of the beneficiaries who do not consent or are under an incapacity are not prejudiced thereby."

The plaintiff contends, however, that the trust instrument created beneficial interests in the Ware's next of kin and therefore the settlor and his wife were not the sole beneficiaries and they could not amend the trust to the prejudice of their next of kin without the consent of said

3. The result would be the same if Iowa law governed. In re Estate of Lundgren, 1959, 250 Iowa 1233, 98 N.W.2d 839.

4. Attorney Glenn T. Cousins who drafted subject instrument testified he thought the Supplemental Trust "would be better than a will" and explained the same to Mr. and Mrs. Ware.

next of kin. Defendant denies any remainder interests were created and contends Fred E. Ware had a reversion of the trust estate and therefore, with his wife, constituted the sole beneficiaries of the trust. This question must be resolved by ascertaining the meaning of the provision relating to the distribution of the trust estate in default of designation by will. In this regard the trust provided that upon the death of the survivor of Fred and Ann Ware the trustee was to transfer the entire trust estate *to the administrator of his (her) estate.*

Initially it must be determined what law is controlling upon the construction of the language of an inter vivos trust of intangible personal property. This is to be distinguished from problems pertaining to the validity and the administration of trusts. There appear to be no Iowa cases upon the question. Examination of the authorities indicates there has been disagreement as to whether the law of the settlor's domicile or the place where the trust is being administered is controlling. The Restatement of Conflict of Laws § 296 adopts the view that "in the absence of controlling circumstances to the contrary, * * * the domicil of the settlor of the trust [is controlling]." Bingen v. First Trust Co., 1939, 8 Cir., 103 F.2d 260. The problem is brought into proper focus by Professor Dean in Conflict Avoidance in Inter Vivos Trusts of Movables, 21 Law & Contemp. Prob. 483 (1956). Involving a similar problem, see Land, Trusts in the Conflict of Laws, § 28.2 at 150, which states:

"The cases involving *inter vivos* trusts of intangible personal property in which a question arose over the construction of 'heirs' have generally applied the law of the state with which the trust has the most substantial connection"

and continues, § 32.2 at 186:

"In *inter vivos* trusts of personal property, the law of the place with which the trust has the most substantial connection should be looked

to, and ordinarily it should be the law of that state as of the date of creation of the trust."

Fred E. Ware always lived in California. He came to Iowa in 1948 to execute the trust instrument in question. The trust instrument was prepared by Iowa counsel who advised the settlor as to its ramifications. After 1948 he always came to Iowa to transact any and all business involving the trust. The situs of the trust property was in Iowa where the trustee was located. While questions of administration of trusts may involve different considerations than those of construction, it should also be noted that the trustee was exempted from the statutory investments prescribed by Iowa law; and further that the subject 1948 trust as well as the 1938 trust and the original trust of 1914 were all administered solely in Iowa.

Against this factual pattern it appears that even though the domicile of the settlor is an important consideration, when there is such a concentration of other important elements in a different jurisdiction, the domicile of the settlor is not controlling. Commissioner of Internal Revenue v. Brown, 1941, 3 Cir., 122 F.2d 800; In re Baekeland's Will, Sup.1953, 124 N.Y.S.2d 126. Klumpert v. Vrieland, 1909, 142 Iowa 434, 121 N.W. 34, is not to the contrary, as it involved a testamentary trust of real and personal property.

With this preliminary problem aside, attention must be given the meaning of the provision "and in default of such designation, then to the administrator of his [her] estate." Plaintiff strongly urges that this language, coupled with the fact there was a spendthrift provision in the 1948 trust, indicates the intention of the settlor that he and his wife were not to be the sole beneficiaries of the trust.

What beneficial interests are created depends upon the intent of the settlor. Although various courts have construed very similar provisions, no Iowa cases have been found that are de-

terminative of the issue. However, the courts which have passed upon the issue have uniformly held that when a settlor transfers property inter vivos in trust with the income payable to himself for life, and on his death for the property to be conveyed, absent appointment by will, to his estate, or to his executors or administrators, he is the sole beneficiary of the trust. II Scott, Trusts § 127.1 (2d ed. 1956). Restatement, Second, Trusts § 127 Comment b. The inclusions of the spendthrift provision requires an opposite result, plaintiff argues, because it indicates the trustor was attempting to protect himself from his alcoholism and accompanying lack of discretion and judgment. The case strongly urged in support thereof is Downs v. Security Trust Co., 1917, 175 Ky. 789, 194 S.W. 1041. However, the trust there provided it was not revocable without the trustee's consent. The trustee refused to agree to the revocation and revocation was not allowed. This important element is lacking in the case at bar.

The better rule appears to be that a spendthrift provision in a trust created by the sole beneficiary should not prevent revocation. Manice v. Howard Sav. Institution, 1954, 30 N.J.Super. 267, 104 A.2d 74. Weymouth v. Delaware Trust Co., 1946, 29 Del.Ch. 1, 45 A.2d 427. It is well settled that a settlor cannot effect a spendthrift trust for his own benefit. II Scott, Trusts § 156 (2d ed. 1956). Restatement, Second, Trusts § 156. The test is only whether the settlor and his wife constituted the sole beneficiaries. If they did, they could modify the trust notwithstanding the inclusion of the spendthrift provision. The Court finds herein that the settlor and his wife constituted the sole beneficiaries of the trust and therefore the settlor could modify the same with the consent of his wife.

The next question of whether the settlor was under an incapacity in 1959 at the time of the purported modification of the trust requires a comprehensive consideration and examination of the evidentiary facts. Our first concern is what law is governing. All of the previous discussion concerning the law governing the construction of the trust applies here. The law of Iowa, the situs of the trust estate, is controlling. Hutchison v. Ross, 1933, 262 N.Y. 381, 187 N.E. 65, 89 A.L.R. 1007. See generally Restatement, Conflict of Laws § 15 at 53; Dean, Conflict Avoidance in Inter Vivos Trusts of Movables, 21 Law & Contemp. Prob. 483 (1956).

"As a general rule a person has capacity to create a trust by transferring property inter vivos in trust to the extent that he has capacity to transfer the property inter vivos free of trust." Restatement, Second, Trusts § 19.

"Mental incompetency, which will defeat the trust, exists where a person is incapable of understanding and acting with discretion in ordinary affairs of life, or is incapable of understanding, in a reasonable manner, the nature and effect of the trust. Strictly speaking, the question presented in such a case is not necessarily whether the settlor was generally of sound mind, but whether he had sufficient mental capacity to understand the trust which he executed." 89 C.J.S. Trusts § 73.

The question is, did the settlor at the time he executed the supplemental trust, understand the consequences and effects of the same upon his rights and interests. Stephenson v. Stephenson (1956) 247 Iowa 785, 74 N.W.2d 679. Brewster v. Brewster (1922) 194 Iowa 803, 188 N.W. 672.

The presumption is in favor of competency, and the burden of proof to show the contrary rests on him who so alleges to establish the same by clear, satisfactory and convincing proof. Leonard v. Leonard (1944) 234 Iowa 421, 12 N.W.2d 899; Stephenson v. Stephenson, supra.

A higher degree of mental capacity is required to execute an inter vivos conveyance or contract or to transact business generally, than is required in executing a will. In re Ruedy's Es-

tate (1954) 245 Iowa 1307, 66 N.W.2d 387; In re Van Dyke's Estate (1954) 245 Iowa 942, 65 N.W.2d 63. The necessary mental capacity to execute a will requires that the testator (1) understand the nature of the instrument, (2) know and understand the nature and extent of his property, (3) remember the natural objects of his bounty, (4) know the distribution he desires to make. In re Estate of Burrell (1959) 251 Iowa 185, 194, 100 N.W.2d 177. If testator's mental capacity is not equal to any one of these tests, he cannot make a valid will. In re Springer's Estate (1961) 252 Iowa 1220, 110 N.W.2d 380; In re Olson's Estate (1960) 252 Iowa 471, 106 N.W.2d 345. Although the test of mental capacity is applied as of the date of execution of the questioned document, evidence of a person's prior or subsequent condition is admissible to evidence his condition at the time in issue. In re Springer's Estate, supra (will); Brewster v. Brewster (1922) 194 Iowa 803, 188 N.W. 672 (deed). The tests are well established. It is the combined weight of all the evidence in each case that must determine the result. In Brewster v. Brewster, supra, at p. 807, 188 N.W. at p. 674 the Court said:

> "It was not necessary for the plaintiff to establish complete mental incapacity on the part of the grantor. The court is entitled to take into consideration his physical condition; the adequacy of consideration; whether or not the conveyance was improvident; the relation of trust and confidence between the parties to the conveyance, and the weakness of mind of the grantor as judged by his other acts within a reasonable time prior and subsequent to the act sought to be impeached.

> "In brief, the determination of the absence or presence of sufficient mental capacity on the part of the grantor must be based upon the combined weight of all of the evidence. It is composite, and a court should consider and determine the ultimate proposition from every angle presented by the evidence. If all of the evidence and the reasonable inferences therefrom lead to the conclusion that the grantor was incompetent, and that he lacked sufficient reason to understand or appreciate his act or the reasonableness and the consequences of his act, then it may be said that such person is mentally incompetent to do the thing against which complaint is lodged."

Plaintiff contends the settlor, Fred E. Ware, was and had been a chronic and habitual alcoholic for such a period of time that his mental capacity was impaired to a degree below the level of required mental capacity when he executed the supplemental trust agreement in 1959. Defendant, on the other hand, contends that plaintiff has utterly failed to establish her claim in this regard. It should be kept in mind that the record before the Court does not raise any issue of temporary incapacity on account of "acute" alcoholism, or temporary intoxication at the time the instrument in question was executed. Rather the issue is whether Fred E. Ware had so deteriorated in mental capacity, as a result of chronic alcoholism, that he was not sufficiently mentally competent to execute the instrument in question. It is the degree of mental incapacity that is important not the cause thereof. Kendall v. Ewert (1921) 259 U.S. 139, 146–147, 42 S.Ct. 444, 66 L.Ed. 862; 29 Am.Jur., Insane Persons, § 86. See also, Matthewson v. Fahnestock (1933) 217 Iowa 348, 251 N.W. 643; Menkins v. Lightner (1857) 18 Ill. 282. However, to the extent that settlor's history of alcoholism sheds any light on his mental capacity at the time in question, it has some relevance.

Settlor, Fred E. Ware, started drinking at an early age, about 17. By the time he reached 22 or 23 years of age his drinking got beyond his control. After their marriage in 1932 his wife too commenced drinking and by 1953 both Ware and his wife exhibited signs

of alcoholism. In 1958 medical records indicated Ware had a very long alcoholic history (14 years) and was consuming up to one-fifth bourbon whiskey a day. During hospitalization he required alcohol. Ware was never able to quit drinking for more than a day or two and he died of a heart attack at the age of 50, five days after his wife died of cancer. This long and continuous consumption of alcohol took its toll. After the Wares were married in 1932 they had a beautiful home in Beverly Hills, California, with a swimming pool, servants and a boat. They lost all this to alcohol, as well as two other modest homes they purchased in later years. Eventually their standard of living changed to comparative squalor. Ware's personal appearance likewise deteriorated. His clothes were unkempt and he went months without a haircut. However, when he came to Clinton, Iowa in 1959 and executed the trust instrument in question, his appearance was normal. On one occasion at the bank he smelled of liquor and there was evidence of drinking in his hotel room. However, generally, his actions appeared to be not out of the ordinary, except that he and his wife remained close to their hotel room outside of their business visits to the bank. They showed little interest in the City of Clinton or its affairs. This was not unusual. Their last visit to Clinton was in 1953, and it was made in connection with transferring assets from the 1938 trust to the 1948 trust. However, after executing the 1959 supplemental trust agreement irrevocably leaving a residuary trust of over a million dollars for such charitable purposes as the trustee bank might determine to be to the best interest and advancement of the community and general welfare of the people of the City of Clinton, Iowa, it is strange that Ware made no inquiry or suggestions as to what the needs of the community might be.

There is other testimony indicating outwardly, at least, that in Clinton Ware was on his good behavior, or that testimony regarding his unkempt appearance, emotional instability, anti-social behavior and alcoholic irresponsibility in California was an exaggeration. The Court is inclined to believe the former. The medical testimony and records confirm his chronic alcoholism. Likewise the craving appetite for alcohol which had become a necessity, made it necessary for Ware to protect his source of income. Ill behavior might cut it off. Ware had never worked in his lifetime. In later years he was unable or at least felt unsecure in transacting ordinary business affairs, and up until her death, even delegated to his wife such ordinary tasks as depositing and cashing checks at the bank. His complete dependence on his wife for even the most simple tasks is climaxed in his death amidst his bottles five days following her death. Medical experts for the plaintiff testified that Fred Ware was an alcoholic who was suffering from chronic mental deterioration and was incompetent. Medical experts for the defendant testified to the contrary. The Court is inclined to agree with the former. A review of all the evidence [5] and the reasonable inferences to be drawn therefrom leads to the conclusion that Fred Ware lacked sufficient reason to understand the instrument he executed or the consequences thereof. The Court finds that Fred E. Ware was incapable of understanding the trust instrument at the time he executed it in April 1959. Neither did he know and understand the income available to him under the 1948 trust at that time, nor did he understand the survivor's (he or his wife) rights under that trust to dispose of the trust estate by will.

The Court further finds that whatever comprehension Fred Ware had of his income and property, was subjugated to his craving for alcohol to such an extent that he was incapable of exercising ordinary discretion with respect thereto, and to this extent he was likewise mentally incapable of executing the 1959 Sup-

---

5. Evidence hereinafter discussed in connection with claim of undue influence must necessarily be included, Brewster v. Brewster, supra.

plemental Trust Agreement. This brings us to plaintiff's further contentions that said instrument is invalid because its execution (a) resulted from undue influence (b) was obtained by economic duress and overreaching by the defendant (c) and was prompted by defendant while standing in a confidential or fiduciary relationship with Ware and therefore the burden shifts to defendant to prove that Ware acted freely and with full knowledge of all the facts.

■■■ Under Iowa law: "Our decisions uniformly hold that to set aside an instrument on the ground of undue influence there must be such persuasion as results in overpowering the will of a person or prevents him from acting intelligently, understandingly and voluntarily—such influence as destroys the free agency of the grantor and substitutes the will of another person for his own (citing cases). And this evidence as to undue influence must also be clear, satisfactory and conclusive." Leonard v. Leonard (1944) 234 Iowa 421, 429, 12 N.W.2d 899, 902 (deed); Stephenson v. Stephenson, 247 Iowa 785, 74 N.W.2d 679 (deed); In re Estate of Hollis (1944) 234 Iowa 761, 769, 12 N.W.2d 576, 581 (will). However, where it is established that a confidential relationship existed between the parties the burden of proof shifts and it becomes the duty of the one seeking to uphold the validity of the instrument in question to establish that the cestui acted with freedom, intelligence and full knowledge of all the facts. Utterback v. Hollingsworth (1929) 208 Iowa 300, 225 N.W. 419. Before this doctrine can be applied, however, the existence of the confidential relationship must be proved in a clear and convincing manner. Else v. Fremont Methodist Church (1955) 247 Iowa 127, 73 N.W.2d 50. Dibel v. Meredith (1943) 233 Iowa 545, 10 N.W.2d 28; Merritt v. Easterly (1939) 226 Iowa 514, 284 N.W. 397.

■■ It is clearly and firmly established and the Court finds that both a fiduciary and confidential relation existed between the defendant and Fred E. Ware on April 20, 1959. The relationship of fiduciary had been in existence for a considerable period of time. Since execution of the 1948 trust substantially all of the assets of Fred E. Ware were held by defendant as trustee of the trust. All of Fred Ware's income came from the trust and it was completely discretionary with the defendant as to whether any sums were paid Ware in excess of the $400 a month prescribed in the 1948 trust. The relation was also a confidential one. The defendant bank had gained the confidence of Ware many years before. In 1938 he and his sister had executed a trust instrument naming defendant as trustee and providing for monthly income payments of $400 per month. This was followed by the 1948 trust heretofore set out. Ware's confidence and trust in the bank not only extended over a long period of time but due to his alcoholism and mental deterioration it became one of absolute dependence by 1959. The defendant bank was deserving of this confidence—it managed Ware's affairs in an excellent fashion. As early as 1946 defendant recognized Ware's incompetence in business affairs and sent a representative to California to approve the house Ware was purchasing and supervised the closing transaction of a $10,000.00 down payment. The funds were from accumulated income in the trust. Despite the fact that the trust income increased rapidly through the years, the defendant kept income payments to Ware at a conservative figure. (By 1959 trust earnings exceeded $40,000 a year although monthly payments to Ware were held to $850[6] per month). This is not to criticize the defendant. Rather it indicates the trustee was well aware of Ware's complete incompetence in ordinary business affairs. Likewise it is abundantly clear that the only way defendant could secure the cooperation of Ware was to suggest a review of his affairs with a hint that

6. From 1954 to 1959 defendant distributed $750 per month to Ware and $100 per month to his mother.

additional funds might be available for Ware's needs. This was true in 1953 when Ware's presence was needed in transferring assets from the 1938 trust to the 1948 trust and at that time approximately $5,500 was paid to Ware from the 1938 trust. In 1959 Ware and his wife came to Clinton at the invitation of the defendant. Prior to coming, Ware requested and was paid an additional $1000.00 to cover current bills and provide funds for the trip. After the Wares arrived in Clinton, the defendant learned that Ware's current income tax return had not been made out and the defendant properly caused the same to be done and paid the tax bill for Ware in the amount of $1,194.59.

After the supplemental trust agreement was executed, an additional sum of $2,000 was paid to Ware and thereafter the monthly allowance to Ware was raised to $1,150. Again the Court finds no grounds for criticism of the defendant in suggesting the trip or making such payments to Ware—they were reasonable under the circumstances. But the background of the defendant's activity in this regard cannot be ignored in determining whether Ware acted with freedom, intelligence and full knowledge of all the facts. It must be recognized that Ware's appetite for alcohol and his demands for money were such that he would readily sacrifice control over ultimate disposition of his property to meet a more current need for money. Kendall v. Ewert (1922) 259 U.S. 139, 146–147, 42 S.Ct. 444, 66 L.Ed. 862.

The defendant arranged for the attorney who drew the instrument in question, to meet the Wares at the defendant bank. All of the discussions relative thereto with the Wares took place at the bank and there it was executed. The defendant as trustee was given complete discretion to distribute the income and assets of said trust for such charitable purposes as it might determine to be to the best interest and advancement of the community and the general welfare of the City of Clinton, Iowa. The instrument requests that the trustee employ the attorney who drew the instrument for such legal counsel as it may deem necessary. It likewise directs that the trustee receive a reasonable compensation for its services to be fixed by itself.

None of the foregoing facts and circumstances standing alone can be said to be determinative of the issue before us, but taken together they make it abundantly clear that the defendant has failed to establish that Fred E. Ware acted with freedom, intelligence and full knowledge of all the facts in executing the 1959 supplemental trust agreement. The duty imposed upon one standing in confidential relationship to another is stated by the Iowa Supreme Court in Dibel v. Meredith (1943) 233 Iowa 545, 551, 10 N.W. 2d 28, 31.

"The force of the holding is that where one person stands in a confidential relationship to another he will not be permitted to retain advantages of a transaction with the other person when they may reasonably be the result of confidence reposed, unless he shows that the other party acted with freedom, intelligence and full knowledge of the facts and had an opportunity to secure competent and impartial advice from some person other than the donee. In passing upon such transactions courts of equity will scrutinize with jealous vigilance, and in the end will require the dominating party to a confidential relationship to conduct himself in his dealings with the other with the utmost good faith. It was likewise held that the donor was entitled to have independent advice. 'Independent advice' in this connection means the showing that the donor had the benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise the donor impartially and confidentially as to the

consequences to himself and of his proposed benefaction. Post v. Hagan, 71 N.J.Eq. 234, 65 A. 1026, 124 Am.St.Rep. 997."

It is recognized herein that the trustee is not the beneficiary under the trust, but as trustee with such wide discretion, the benefits accruing to it are such that under the circumstances of this case it must be held to the same burden of proof as if it were the beneficiary. Zeigler v. Coffin (1929) 219 Ala. 586, 123 So. 22, 63 A.L.R. 942; See also, Peyton v. William C. Peyton Corp. (1939) 23 Del.Ch. 321, 7 A.2d 737, 123 A.L.R. 1482.

This Memorandum shall constitute the Court's findings of fact and conclusions of law, as provided by Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C. An Order will be entered requiring the defendant to make a full and complete accounting of said trust estate and for judgment against the defendant and in favor of the plaintiff for the amount thus shown to be due.