William C. HILBERT, individually and as Guardian of the Guardianship of Virginia M. Hornig, Appellant (Defendant/Third–Party Plaintiff),

v.

Eugene H. BENSON, as Trustee for the Trust Estate of Virginia M. Hornig, Appellee (Plaintiff),

and

Frederick J. Harrison, Appellee (Third–Party Defendant).

No. 95–242.

Supreme Court of Wyoming.

June 3, 1996.

Cary R. Alburn, III, of Alburn & Earnshaw, P.C., Laramie, for appellant Hilbert.

Kermit C. Brown and Bruce B. Waters of Smith, Stanfield & Scott, LLC, Laramie, for appellee Benson.

Lawrence G. Orr of Orr, Buchhammer & Kehl, Cheyenne, for appellee Harrison.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

GOLDEN, Chief Justice.

In a declaratory judgment action filed by a trustee against a guardian, the district court determined that trustor, Virginia Hornig (Hornig), possessed capacity and that appellee Frederick Harrison (Harrison), trustor's attorney, did not exert undue influence over her when she executed an irrevocable trust. Hornig's guardian, appellant William Hilbert (Hilbert), appeals the decision.

We affirm.

## ISSUES

Hilbert presents the following issues:

I. Whether the district court's order of June 29, 1995, incorporating its April 28, 1995, opinion letter constitutes an appealable order under Rule 1.05(a) and/or (b), Wyoming Rules of Appellate Procedure.

II. Whether appellant met the burden of proof necessary to show lack of capacity on the part of Virginia Hornig, at the time she executed the irrevocable trust agreement on February 11, 1993.

III. Whether there was sufficient evidence for the district court to find that the irrevocable trust agreement executed by Virginia Hornig on February 11, 1993, is valid and enforceable.

Appellee Eugene H. Benson (Benson) presents these issues:

1. Does the Court's June 29, 1995, Order entered following the first portion of a bifurcated trial, constitute an appealable order?

2. Did Virginia Hornig have testamentary capacity sufficient to validly execute an Irrevocable Trust Agreement on February 11, 1995 (sic)?

Harrison presents these issues:

I. Does the order of June 29, 1995, entered following the first portion of a bifurcated trial, constitute an appealable order?

II. Did Virginia Hornig have testamentary capacity sufficient to validly execute an irrevocable trust agreement on February 11, 1995 (sic)?

III. Was the trial court correct in holding that the irrevocable trust was valid and enforceable?

## FACTS

In its decision letter, the district court found that the evidence at trial painted a vivid picture of a remarkable woman:

[Virginia] Hornig was a school teacher in Rawlins, Wyoming for many years. People respected her. She was revered by her many former students. She was independent and financially responsible. She invested her funds wisely and managed to establish a modest estate of approximately $200,000.00. She apparently never married and has no children.... [S]he executed a will on April 17, 1990, at a time when no one disputes that she was competent. She had no doubt how she wanted her estate to be distributed [leaving] almost her entire estate to the Church and other Catholic organizations and [giving] one tenth of her estate to each [of two] cousins....

In 1992, Ms. Hornig began to experience a general physical and mental deterioration. At that time, she was 70 or 71 years of age and diabetic. She became uncharacteristically untidy, had short term memory problems and confusion from time to time and experienced problems managing her affairs. Virginia Hornig is currently residing in a nursing home in Texas and has been diagnosed as suffering from Alzheimer's Disease. The evidence indicated she was in the preliminary stages of Alzheimer's Disease during the time surrounding the execution of the trust. She became concerned that, because of her deteriorating condition, she might do something to cause a change in the disposition of her property as set forth in the will. She consulted with her attorney, Mr. Harrison, who had represented her over a long period of time. She, after being advised by Harrison, determined the answer to her worries was the formation of an irrevocable trust. Dispositive portions of the will and trust remained exactly the same, with the minor exception that her bequest to her cousins was capped at $5,000.00.

Hilbert, one of the two cousins, had himself appointed guardian for Hornig. Follow-

ing actions by Hilbert, Eugene H. Benson, as trustee for the trust estate of Hornig, sued Hilbert individually and as guardian of the guardianship for Hornig. Hilbert filed an answer and counterclaim and a third-party complaint against Frederick J. Harrison, Benson's attorney. Harrison withdrew as counsel for Benson. Benson's complaint alleged generally that Hilbert, appointed guardian in the State of Texas, transferred trust assets without knowledge of the trustee in Wyoming, revoked trust authority over retirement and social security accounts without authority and generally interfered with and jeopardized the ability of the trust to protect the interest of Hornig. The trustee's complaint requested that the court declare Hornig as having had capacity to execute the trust agreement, declare the trust's validity, declare that the trustee has control of Hornig's assets, command Hilbert to return assets to the trust, and enjoin Hilbert from interfering with the administration of the trust in the future. Hilbert's amended counterclaim and third-party complaint alleged that Hornig lacked testamentary capacity to execute the trust, Benson and Harrison knew or should have known she was incompetent, Harrison improperly influenced Hornig to sign the trust agreement, and Hornig is entitled to damages because of Benson's and Harrison's actions.

The trial court bifurcated the matter and on March 29, 1995, determined the issues of whether the trustor, Hornig, was mentally competent or had testamentary capacity on February 11, 1993, when she executed the irrevocable trust agreement and whether her attorney exerted undue influence over Hornig regarding the execution of that trust. The district court determined that Hilbert failed to meet his burden of proving by a preponderance of the evidence that Hornig did not possess testamentary capacity when she executed the irrevocable trust agreement and upheld the validity of the trust. Specifically, the district court found that, in accordance with *Matter of the Estate of Obra,* 749 P.2d 272 (Wyo.1988), Hornig comprehended the extent and nature of her estate, understood the identity of the beneficiaries and their relationship to her, and understood the nature of the testamentary act of executing the trust document, that it was to be a disposition of her property to take effect at her death. The court also found there was no evidence that Harrison had exerted undue influence to cause her to execute the trust document. An order was entered to this effect and this appeal followed.

## DISCUSSION

*Appealable Order*

■ The district court denied a motion to postpone the second portion of the bifurcated trial and scheduled it to proceed while this appeal was pending. Appellee Benson, on November 3, 1995, filed a motion with this Court to dismiss this appeal on the ground that the order from which the appeal is taken is not appealable pursuant to WYO. R.APP. P. 1.05. This Court denied that motion on November 16, 1995. In his appellate briefing, appellee Benson again raises this issue. Having previously ruled, we are reluctant to revisit the matter. Although the point is arguable and a close question is presented, we are satisfied that we should in the interests of judicial economy review the central issue presented, namely, the trustor's mental capacity to create and execute the trust agreement. On past occasion, this Court has treated a notice of appeal as a petition for either a writ of review or certiorari when we determined that the circumstances warranted. *See, e.g., In Re Big Horn River System,* 803 P.2d 61, 66–67 (Wyo.1990); *J Bar H, Inc. v. Johnson,* 822 P.2d 849, 854 (Wyo.1991). In any event, given the present posture of this case with the litigants having provided the Court with appropriate briefing, we believe that review is appropriate under the circumstances.

*Capacity*

■ In determining Hornig's competence, the district court applied the standard used for testamentary capacity set out by this Court in *Matter of the Estate of Obra,* 749 P.2d 272 (Wyo.1988). Under that standard, the district court determined that Hilbert failed to prove by a preponderance of the evidence that Hornig did not understand the nature of her act, the nature or character of

her property and the natural objects of her bounty.

■ A review of the trust agreement indicates that it is an irrevocable *inter vivos* trust. A person lacking capacity to make an ordinary transfer of property has no capacity to create an *inter vivos* trust. *Walton v. Bank of California, National Association,* 218 Cal.App.2d 527, 32 Cal.Rptr. 856, 865 (1963) (citing RESTATEMENT (SECOND) OF TRUSTS §§ 19, 333 (see comment *f,* p. 151) (1959)); *Harrison v. City Nat'l Bank of Clinton, Iowa,* 210 F.Supp. 362, 371 (S.D.Iowa 1962). In determining the test for mental competency, *Harrison* considered the following:

> "Mental incompetency, which will defeat the trust, exists where a person is incapable of understanding and acting with discretion in ordinary affairs of life, or is incapable of understanding, in a reasonable manner, the nature and effect of the trust. Strictly speaking, the question presented in such a case is not necessarily whether the settlor was generally of sound mind, but whether he had sufficient mental capacity to understand the trust which he executed."

*Harrison,* 210 F.Supp. at 370 (quoting 89 CJS *Trusts* § 73 (1955)).

That court determined the relevant question was:

> did the settlor at the time he executed the supplemental trust, understand the consequences and effects of the same upon his rights and interests.

*Harrison,* 210 F.Supp. at 370.

Similarly, in *Matter of Estate of Head,* 94 N.M. 656, 615 P.2d 271 (App.1980), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980), the New Mexico appellate court said that when determining whether a trust instrument should be invalidated for lack of mental capacity, the test of mental capacity is

> whether a person is capable of understanding in a reasonable manner, the nature and effect of the act in which the person is engaged.

*Estate of Head,* 615 P.2d at 274.

■ In comparing the governing standards of testamentary capacity for executing wills and of contractual capacity for executing *inter vivos* conveyances, we agree with the *Harrison* court that a higher degree of mental capacity is required to execute an *inter vivos* conveyance or contract or to transact business generally, than is required in executing a will. *Harrison,* 210 F.Supp. at 370. All three decisions just discussed hold that to invalidate a trust instrument, mental incompetency must be operative at the time of the execution of the instrument, there is a presumption of competence, that competence is a question of fact, and a determination that the trustor is competent will be upheld if supported by substantial evidence. *Walton,* 32 Cal.Rptr. at 865; *Harrison,* 210 F.Supp. at 370; *Estate of Head,* 615 P.2d at 274. The Iowa and New Mexico courts state that the party alleging incompetence bears the burden of proof and must establish incompetency by clear and convincing evidence. *Harrison,* 210 F.Supp. at 370; *Estate of Head,* 615 P.2d at 274.

■ In this case, the district court, as the trier of fact, required only proof of testamentary capacity. Actually, Hilbert, as the one asserting incompetence, had the burden to show lack of contractual capacity by clear and convincing evidence. (In this regard, we note that the district court apparently used only an ordinary evidence standard, which was to Hilbert's advantage.) Even though the district court focused upon testamentary capacity, our review of the record demonstrates that the district court's findings of fact were so thorough as to demonstrate Hornig was possessed of contractual capacity, as well as testamentary capacity, at the time she executed the trust instrument. Hilbert failed to meet his burden of establishing she was not, and any error in this respect was harmless. The decision that Hornig possessed the requisite mental competence at the time she executed the trust instrument is correct when the appropriate rule is invoked.

In addition to the discussion of facts which established that Hornig executed the trust agreement with her long-time attorney upon realizing her health was failing, the district court also found that:

It is clear to the Court, from the testimony of every witness who testified, that she definitely understood what she was doing when she executed the document. She understood the nature of the testamentary act; she wanted to make sure her property was disposed of in the manner she had determined and did not want to be concerned about changing it because of her deteriorating mental state. She knew the identity of the prospective beneficiaries and the relationship of both cousins and the Catholic organizations to herself. She knew the nature of her estate. The general testimony of the witnesses that Ms. Hornig was becoming forgetful with regard to her short term memory, that she was becoming suspicious and confused, does not establish that she was incompetent to execute the trust agreement.

\* \* \* \* \* \*

The Court is persuaded by the totality of the evidence that she possessed the necessary clearness of mind and memory and the ability to understand facts and elements in their relation to each other when the trust was executed.

Under the correct standard, the district court's decision indicates that at the time she executed the trust, Hornig understood the consequences and effects of the same upon her rights and interests. *Harrison,* 210 F.Supp. at 371. The district court's decision that Hornig had the requisite capacity to execute the trust is affirmed.

*Sufficiency of the Evidence For Validating the Trust*

 Hilbert challenges the trial court's finding that the trust was valid and enforceable, claiming no evidence was submitted on this issue and it must still be decided. The only issue regarding the validity of the trust joined by the pleadings involved the mental capacity of trustor Hornig. The trustee's complaint for declaratory judgment requested that the trust be declared "valid in all particulars." Hilbert's answer generally denied the trust was valid and in his amended counterclaim alleged that the trust was not valid on grounds of lack of testamentary capacity and undue influence.

The elements of a valid trust include a competent settlor and trustee, intent by the settlor to create a trust, ascertainable trust res, sufficiently ascertainable beneficiary or beneficiaries, a legal purpose, and a legal term. *McGinnis v. McGinnis,* 391 P.2d 927, 933 (Wyo.1964); *Dallas Dome Wyoming Oil Fields Co. v. Brooder,* 55 Wyo. 109, 127–28, 97 P.2d 311, 318 (1939); *State v. Underwood,* 54 Wyo. 1, 25, 86 P.2d 707, 714 (1939); *In Re Baum,* 22 F.3d 1014, 1018 (10th Cir.1994) (citing *In re Estate of Granberry,* 30 Colo. App. 590, 498 P.2d 960, 963 (1972) and *Estate of Brenner,* 37 Colo.App. 271, 547 P.2d 938, 941 (1976)); *see also Matter of Estate of Boyer,* 117 N.M. 74, 868 P.2d 1299, 1303 (1994).

Although the record is missing documents relating to bifurcation, the trial court apparently granted a request to bifurcate the proceedings. At trial, the trial judge directed the record to indicate that the matter before the Court at this portion of the bifurcated proceedings was the issue of "the validity of the Trust, ... whether that Trust is valid or not and the issues will be limited to that." All trial testimony addressed only testamentary capacity and undue influence. The written closing arguments submitted addressed only these two aspects of validity. The trial court's ruling that the trust is valid and enforceable is supported by the record, precluding Hilbert from raising the issue of validity in any other context.

Affirmed.