Cathy L. DAUGHTON and Cindy M. Earls, As Conservators and Guardians of Ollie Elizabeth Parson, Plaintiffs–Appellants,

v.

Cecil J. PARSON and Nancy Alice Parson, Defendants–Appellees.

No. 87–468.

Court of Appeals of Iowa.

March 9, 1988.

Kirke C. Quinn and Bruce L. Anderson of Doran, Courter, Quinn & Doran, Boone, for plaintiffs-appellants.

Larry P. Van Werden of Reynoldson, Van Werden, Kimes, Reynoldson, Lloyd & Wieck, Osceola, for defendants-appellees.

Heard by OXBERGER, C.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The plaintiffs brought this action to set aside two deeds (executed and delivered by their ward prior to the creation of the conservatorship and guardianship) which conveyed their ward's farmland to the defendants. The trial court ruled adverse to the plaintiffs and they appeal. We reverse.

Ollie and Thomas Parson owned and farmed 500 acres of farmland in Decatur County. From 1949 until 1964, Ollie and Thomas lived on and operated the farm. Cecil, their son and appellee here, assisted in the farming operation. In 1964, Ollie & Thomas moved to a residence in Leon, Iowa. After several years Cecil operated the farm by himself. Sometime during 1967, Ollie and Thomas orally agreed to convey the 500 acres to Cecil. No consideration was paid nor was a deed prepared. Thomas died in 1969. Cecil continued to operate the farm.

In October 1984, Ollie, failing in her mental and physical health, executed a power of attorney naming appellee Cecil Parson as her attorney-in-fact. In April of 1985, Ollie Parson fell in her home, breaking her hip. She has since been confined to bed or a wheelchair. She was hospitalized from that time until her transfer to the nursing home where she now resides. On February 26, 1986, Ollie executed and delivered two warranty deeds transferring the 500 acres of farmland to her son and daughter-in-law, Cecil and Nancy Parson, without consideration. She was at that time eighty-nine years of age and hospitalized in the Clarke County Hospital.

On May 23, 1986, the appellants were appointed as guardians and conservators of Ollie and immediately demanded that appellees restore Ollie to ownership of the farmland. They brought this action in equity to have the conveyances set aside based on: (1) Ollie, the ward, lacking sufficient mental capacity; (2) undue influence—confidential relationship; and (3) oral conveyances invalid pursuant to the statute of frauds.

The trial court ruled that a confidential relationship existed; that it was highly questionable that requisite mental capacity existed; and that the execution of the deeds was presumptively fraudulent, thereby shifting the burden to defendants to negate undue influence. The trial court found, however, that the deeds were merely memorializing a previous oral conveyance and declined to set the conveyances aside. Plaintiffs appeal from this decision. Because this is a case in equity, we review it de novo.

■■■■ The party alleging lack of mental capacity sufficient to execute a deed has the burden of proving by clear, convincing, and satisfactory evidence that the grantor did not possess "sufficient consciousness or mentality ... to understand the import of her acts" when the deed was executed. *Costello v. Costello,* 186 N.W.2d 651, 654 (Iowa 1971). A higher degree of mental competence is required for the transaction of ordinary business and the making of contracts than is necessary for testamentary disposition of property. *Costello v. Costello,* 186 N.W.2d 651, 654–55 (Iowa 1971); *Matter of Estate of Herm,* 284 N.W.2d 191, 200 (Iowa 1979).

■ In *Brewster v. Brewster,* the Supreme Court of Iowa listed several factors to consider on the issue of mental capacity. *Brewster v. Brewster,* 194 Iowa 803, 807, 188 N.W. 672, 674 (1922). It stated:

It was not necessary for the Plaintiffs to establish complete mental incapacity on the part of the grantor. The Court is entitled to take into consideration his physical condition; the adequacy of consideration; whether or not the conveyance was improvident; the relation of trust and confidence between the parties to the conveyance, and the weakness of mind of the grantor as judged by his other acts within a reasonable time prior and subsequent to the act sought to be impeached.

*Brewster,* 194 Iowa at 807, 188 N.W. 672.

■ Taking into consideration the above-listed factors and the evidence of this record, we can find that: (1) Ollie Parson was hospitalized, suffering from a broken hip, when the deeds were executed; (2) no consideration was paid; (3) the conveyances left Ollie Parson with virtually no assets; (4) defendant Cecil Parson enjoyed a confidential relationship with Ollie Parson at the time the deeds were executed; (5) Ollie Parson was suffering from senile psychosis, was "apart from reality," and did not know the effect of the instruments; and (6) Ollie Parson lacked the requisite mental capacity to realize the import of executing the deeds.

We also note that the Supreme Court of Iowa has considered the lack of independent advice as another relevant factor in determining mental capacity. *In re Estate of Herm,* 284 N.W.2d 191, 200 (Iowa 1979). It is clear under this record that Ollie Parson did not receive independent advice concerning the deeds in question, for they were prepared by Cecil Parson's attorney. Mr. Parson is one of the grantees under those deeds.

Turning to the question of soundness of mind, the court in *In re Estate of Farris,* stated:

To avoid the farm lease made by decedent it was necessary to show not only that Mrs. Farris was of unsound mind when it was made but that she had no reasonable perception of the nature and terms of the contract. The question is whether decedent had sufficient mental capacity to understand the contract she executed.

*In re Estate of Farris,* 159 N.W.2d 417, 420 (Iowa 1968).

Ollie Parson's treating physician, Dr. Dennis D. Wilken, testified that:

The mental condition of Ollie was that of being disoriented; not knowing where

she was or really who I was. Essentially a confused lady. Had with her most of the time a stuffed animal of some sort and would talk to the stuffed animal; have conversations with it while I'd be talking with her.

Dr. Wilken further testified that this mental condition had not changed since June 14, 1985. When questioned about the ward's condition as of the time of the execution of the warranty deed, Dr. Wilken stated that Ollie Parson did not possess the mental capacity to know the scope and purpose of a warranty deed, nor to know the extent and nature of her property.

Two other health care professionals testified at trial concerning the mental condition of the ward. Decatur County Public Health Nurse Susan Mangels had no contact with the ward after April of 1985. However, Nurse Mangels did testify that at least from and after the fall of 1984 through her last observation of her in April 1985, Ollie Parson was not competent to handle her own business or financial affairs.

Wanda Lesan is a registered nurse at Decatur County Hospital where the ward was hospitalized from April of 1985 through June 14, 1985; she did not observe Ollie Parson during the eight-month period prior to the execution of the deeds. She testified that during the ward's hospitalization from April through June 1985 she saw no reason why Ollie Parson would not have been able to understand business decisions. However, upon cross-examination, Nurse Lesan admitted that during this hospitalization Ollie Parson was frequently confused and disoriented.

The appellee raises the point that "[m]ere mental weakness or unsoundness to some degree is not sufficient in the absence of fraud or undue influence, to invalidate a contract." *Sjulin v. Clifton Furniture Co.,* 241 Iowa 761, 763, 41 N.W. 2d 721, 723 (1950) (mental incompetent contracted to buy furniture). Appellee contends then that Ollie Parson's state of mind was merely unsound and therefore appellants have to prove fraud or undue influ-

ence. The court states in the same case, however, that:

> To avoid the contract it must appear not only that Sterling was of unsound mind when it was made but that this unsoundness was such that he had no reasonable perception of the nature and terms of the contract.

*Id.,* 41 N.W.2d at 723.

Dr. Wilken, who began treating Ollie Parson eight months prior to the conveyances, testified that her state of mind was such that she would not have had a reasonable perception of the nature and terms of the contract. He also testified that her condition had not changed as of the date of trial, January 7, 1987. Dr. Wilken stated that she was not even oriented as to time and place. This was Ollie Parson's condition, according to Dr. Wilken's testimony, from at least June 14, 1985, until trial, January 7, 1987.

We believe the trial court reached the same conclusion as to Ollie's mental capacity and set forth the following from the trial judge's ruling:

> Plaintiffs argue persuasively the concepts of undue influence, confidential relationship and Ollie's incapacity at the time the deed was signed. A confidential relationship clearly existed. The transaction is presumptively fraudulent and the burden shifts to the defendant to prove that the advantage was procured without undue influence. (See *Matter of Estate of Herm,* 284 N.W.2d 191). (It is highly questionable that Ollie had the requisite mental capacity to execute a deed on February 26th, 1986).

From the entire record we find that there is clear, convincing, and satisfactory evidence that the grantor, Ollie, did not possess sufficient consciousness or mentality to understand the import of her acts when the deeds were executed. In this respect, the deeds must be set aside.

The appellees next contend that before the deeds can be set aside there must be, in addition to proof of lack of sufficient mental capacity to understand the import of her acts, a further showing of a confidential relationship or exercise of undue influence

by the grantees under the deeds. We disagree. The finding that Ollie was not mentally competent is dispositive without regard to the other theories:

> Trial Court found a confidential relationship existed ... when [grantor] deeded [grantee] her home.... We need not address this issue because we find on the basis of clear, satisfactory, and convincing evidence ... that [grantor] was not mentally competent at the time to make a valid conveyance.

*In re Estate of Herm*, 284 N.W.2d 191, 200 (Iowa 1979).

■ But even if appellees were correct in this contention, the evidence in this case convinces us, as it did the trial court, that a confidential relationship existed between Ollie and Cecil on the date Ollie conveyed the farm. Thus, the conveyance was presumptively fraudulent and voidable. From the record we determine that Cecil has not carried his burden to prove otherwise. *In re Estate of Herm*, 284 N.W.2d 191 (Iowa 1979). In this respect we also determine that the deeds must be set aside. We reach the same result as to Nancy, for it is apparent to us that Cecil at all times was acting for and on her behalf.

We must now consider appellees' final contention that the conveyances were a consummation of an oral contract which allegedly took place some twenty years ago. The Iowa Supreme Court has held that before ordering the specific performance of an oral contract the vendee has the specific burden of proving by a preponderance of clear, satisfactory, and convincing evidence that the alleged oral contract existed and the terms thereof. *Knight v. Anderson*, 292 N.W.2d 411, 417 (Iowa 1980); *Severson v. Elberon Elevator, Inc.*, 250 N.W.2d 417, 420 (Iowa 1977).

■ In addition to proving the existence of an oral contract to convey, the defendant must show that its terms were so "definitely fixed that nothing remains except to reduce them to writing." *Marti v. Ludeking*, 193 Iowa 500, 503–04, 185 N.W. 476, 477–78 (1921); *see also Severson v. Elberon Elevator, Inc.*, 250 N.W.2d at 420.

It is not entirely unlikely from the evidence adduced that some conversation oc-

curred between defendant Cecil Parson and his parents relating to the use and occupancy of the farm in 1967; however, upon review of the entire record, it simply cannot fairly be said that there is clear, convincing, and satisfactory evidence that an absolute conveyance was ever intended. "Specific performance of an oral contract to convey land will not be granted ... unless proof of the contract is clear, satisfactory, and convincing." *Brandt v. Schucha*, 250 Iowa 679, 691, 96 N.W.2d 179, 186 (1959).

■ On de novo review, we find defendants failed to prove the terms and conditions of the 1967 oral conveyances, or even that it occurred, by clear, satisfactory, and convincing evidence. Therefore, we find it unnecessary to address the statute of frauds issue. Accordingly, the ruling of the trial court must be reversed.

There is the remaining issue of whether the trial court erred in failing to consider the claim that sums of money were misappropriated by the defendant. We find the trial court erred in failing to determine the merits of this claim. The issue was before the trial court and should, on remand, be reviewed by that court.

We find the conveyances invalid and reverse the trial court and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.