In the Matter of the ESTATE OF Karl J. BAESSLER, deceased.

Penelope PALMER, Michael Baessler, Kristine Palmer, Thomas Baessler, and Richard Baessler, Plaintiffs–Appellants,

v.

Charlene B. JAMES, William K. James, Julia A. Breitbach, Paul D. James, Douglas K. James, and Neil W. James, Defendants–Appellees.

No. 95–2023.

Court of Appeals of Iowa.

Jan. 29, 1997.

Thomas W. Polking of Wilcox, Polking, Gerken, Schwarzkopf, Hoyt & Copeland, P.C., Jefferson, for Plaintiffs–Appellants.

Mark R. Crimmins and Brian L. Yung of Bennett, Crimmins & Yung, Fort Dodge, for Defendants–Appellees.

Heard by SACKET, P.J., and STREIT and VOGEL, JJ.

STREIT, Judge.

The plaintiffs appeal a district court ruling dismissing their petition to set aside dece-

dent's transfer of assets before death and decedent's will based on undue influence and testator's lack of testamentary capacity.

Karl Baessler was 106 years old when he died testate on January 3, 1994. His wife, Bertha, and only son, Keith, predeceased him. His June 5, 1991 will was admitted to probate by his sole surviving child, Charlene James. Beneficiaries under the will were Charlene, and ten grandchildren, including the plaintiffs, Penelope Palmer, Michael Baessler, Kristine Palmer, Thomas Baessler, and Richard Baessler, the children of Keith Baessler.

Karl's will provided that his Livermore home, and its contents, passed to Charlene. Charlene also received his interest in the farmland.[1] Any cash accounts, CDs, bonds, or other negotiable instruments were to be divided into two equal shares, one share to Charlene and the other share divided among the ten grandchildren. The will had no specific provision for other property and consequently would pass intestate.

On June 16, 1994, Keith's children filed a petition seeking to set aside the will. They insist Karl was not mentally competent to execute a will in June 1991, and that the will was procured by undue influence. They sought to set aside various transfers made during Karl's life which they claimed were procured by Charlene through undue influence. They also object to allowing attorney fees out of the estate.

The district court held Charlene had developed a close and loving relationship with Karl and that Karl sought the advice, comfort, and companionship of his daughter. The trial court concluded:

The relationship that Charlene James enjoyed with her father may have risen to a legal definition of a "confidential or fiduciary relationship," but no proof offered would suggest that Karl Baessler's distribution of his property was the result of any undue influence by Charlene.

The court found nothing in the record to suggest that Karl was not mentally competent to make financial decisions. The court concluded Charlene did not exercise undue

1. Karl previously deeded the property to Charlene.

influence over Karl by forcing him to change his will. The court also awarded the attorney for the estate fees in the amount of $7181. Keith's children have appealed.

***I. Intervivos Gifts–Confidential Relationship.*** Plaintiffs contend Karl's predeath transfers to Charlene were a result of undue influence being exerted by Charlene—a person in a confidential relationship. Karl transferred $75,925.54 in certificates of deposit to joint ownership with Charlene and paid $14,846.14 from his checking account to Charlene over a three-year period. Karl also signed a Warranty Deed to Charlene giving his share of his farm to Charlene.

■ Although our review is de novo we give weight to the trial court's findings. *In re Estate of Clark,* 357 N.W.2d 34, 37 (Iowa App.1984). This also applies to our review of trial court's finding of the existence of a confidential relationship. *In re Estate of Herm,* 284 N.W.2d 191, 199 (Iowa 1979).

■ Keith's children had the burden to show by clear proof the existence of a confidential relationship in which Charlene was the dominate person and Karl the subservient one. *See Luse v. Grenko,* 251 Iowa 211, 214, 100 N.W.2d 170, 172 (1959). A confidential relationship does not arise solely from blood relationship such as between parent and child. *In re Estate of Clark,* 357 N.W.2d at 37. "[I]t may be said that as a general rule the conferring of benefits by a parent upon a child is presumptively valid. The unfavorable presumption arises only where … the child is the dominant personage in that relationship and the parent has become the dependent one, trusting herself and her interests to his advice and guidance." *Curtis v. Armagast,* 158 Iowa 507, 522, 138 N.W. 873, 879 (1912).

A confidential relationship arises whenever a continuous trust is reposed by one person in the skill and integrity of another. *First Nat'l Bank in Sioux City v. Curran,* 206 N.W.2d 317, 322 (Iowa 1973). All the variety of relations in which dominion may be exer-cised by one person fall within the general term "confidential relation." *Id.*

> Confidential relationship is a very broad term and is not at all confined to any specific association of the parties to it. In law it has been defined or described as any relation existing between the parties to a transaction wherein one of the parties is duty bound to act with the utmost good faith for the benefit of the other party. In its broadest connotation the phrase embraces those multiform positions in life wherein one comes to rely on and trust another in his important affairs.

*Id.* at 321–22.

■ There was clear and convincing proof of Charlene's confidential relationship with her father. The trial court found a confidential relationship may have been proven but the court's tepid treatment of this conclusion failed to correctly apply the standard of proof that follows from such a finding. "The courts must scrutinize with *jealous vigilance* transactions between persons sustaining relations of trust and confidence, to the end that the dominating member shall conduct himself with *uberrima fide*—the utmost good faith." *Id.* (emphasis added).

Karl's wife died in 1990. Charlene, who had been an active participant in the family farm operation, began to take a more extensive role as Karl's health deteriorated. In June 1992, Karl moved in with Charlene after his surgery. Charlene decided to move her father in with her rather than placing him in a nursing home. She was involved in the daily conduct of Karl's life and financial affairs. Charlene clearly had a confidential relationship with her father.

■ Where a confidential relationship exists, a transaction by which the one having the advantage profits at the expense of the other will be held presumptively fraudulent and voidable. *In re Estate of Herm,* 284 N.W.2d at 200; *Daughton v. Parson,* 423 N.W.2d 894, 898 (Iowa App.1988). The person in whom the trust is reposed is required to go forward with the evidence. *First Nat'l Bank in Sioux City,* 206 N.W.2d at 322. The burden shifts to the claimant to negate the charge of undue influence by clear and con-

vincing proof. *Pence v. Rawlings*, 453 N.W.2d 249, 252 (Iowa App.1990).

■ Charlene was required to prove by clear, satisfactory, and convincing evidence the "entire good faith" on the part of Charlene and "free, voluntary, and intelligent action on the part of the grantor." *Id.* The burden was upon Charlene to rebut the presumption of overreaching on her part, to affirmatively establish she took no advantage of Karl by reason of their relationship, and Karl "acted voluntarily with freedom, intelligence and a full knowledge of all of the facts." *Id.* at 323. Charlene has failed to prove she did not exert undue influence.

■ Four elements must be proven to rebut a presumption of undue influence being exerted by a person in a confidential relationship with the grantor. In a confidential relationship the grantee must prove (1) the grantor's lack of susceptibility to undue influence; (2) the want of opportunity to exercise such influence and effect the wrongful purpose; (3) the lack of a disposition to influence unduly for the purpose of procuring an improper favor; and (4) a result clearly unaffected by undue influence. *See In re Estate of Welch*, 534 N.W.2d 109, 112 (Iowa App. 1995).

Karl was clearly susceptible to Charlene's influence. There is an abundance of evidence in the record that Karl was depressed, confused, and forgetful. Karl was over 104 years old. He did not remember his only son or all of his grandchildren. He referred to Charlene as "Mom," his dead wife. He left water boiling on the stove.

It is evident Charlene had the opportunity to influence Karl. In 1992, Karl moved in with Charlene. Charlene was Karl's appointed agent under his Power of Attorney. She corresponded directly with Karl's attorney regarding legal matters involving Karl's estate and handled her mother's estate even though Karl was named executor. She handled all of his financial affairs.

The most convincing evidence of Charlene's disposition to influence Karl was the transfer by Karl of $75,925.54 in CDs to joint ownership with Charlene and $14,846 paid to Charlene over a three-year period from Karl's checking account. When Karl changed his will in January 1991, with Charlene present, he signed a Warranty Deed giving his share of the farm real estate to Charlene.

The results clearly demonstrate Charlene's undue influence. Charlene claims that she acted in good faith, the cash she received was for the household, the CDs were not an unnatural disposition, and Karl had the opportunity at all times to obtain independent legal advice. The evidence offered does not rise to the level of clear and convincing proof the intervivos transfers were made without undue influence. Charlene has failed to meet her burden.

■ Keith's children claim Karl lacked the mental capacity sufficient to execute the deed. The party alleging lack of mental capacity sufficient to execute a deed has the burden of proving by clear, convincing and satisfactory evidence that the grantor did not possess "sufficient consciousness or mentality ... to understand the import of her acts" when the deed was executed. *Daughton*, 423 N.W.2d at 896 (citing *Costello v. Costello*, 186 N.W.2d 651, 654 (Iowa 1971)). A higher degree of mental competence is required for the transaction of ordinary business and the making of contracts than is necessary for testamentary disposition of property. *Id.*

> The Court is entitled to take into consideration [on the issue of mental capacity] his physical condition; the adequacy of consideration; whether or not the conveyance was improvident; the relation and trust and confidence between the parties to the conveyance, and the weakness of mind the grantor as judged by his other acts within a reasonable time prior and subsequent to the act sought to be *impeached*.

*Daughton*, 423 N.W.2d at 896 (quoting *Brewster v. Brewster*, 194 Iowa 803, 807, 188 N.W. 672, 674 (1922)).

Karl was 103 years old when he executed the deed. Only one dollar of consideration was paid for the deed. We have found Charlene enjoyed a confidential relationship with Karl at the time the deed was executed. There is also testimony that Karl was suffer-

ing from Alzheimer's disease, he was depressed, and totally dependant upon Charlene for his daily care. In his June 5, 1991 will Karl attempted to again give away this same real estate to Charlene.[2] We find there is clear and convincing evidence that Karl lacked the requisite mental capacity to realize the import of executing the deed.

A confidential relationship was found under the standards applied in *First Nat'l Bank in Sioux City,* and the presumption arose that the transfers were obtained by fraud or undue influence. Charlene did not carry her burden of proof to rebut the presumption by showing the four factors of undue influence, delineated in *In re Estate of Welch,* did not exist.

■ It is a rare case where the dominant individual in a fiduciary relation can sustain a gift to herself by the one who is dependent upon her. *First Nat'l Bank in Sioux City,* 206 N.W.2d at 323. We find Charlene did not by clear, satisfactory, and convincing evidence prove the "entire good faith" on Charlene's part or "free, voluntary, and intelligent action" by Karl. In so ruling, we keep in mind the able trial court, who saw and heard the witnesses, arrived at a different conclusion. However, we find as a matter of law Charlene did not sustain her burden to uphold the transfers and judgment must be entered against her. We reverse and remand to the district court for entry of an order in conformance with the findings of this court that the transfers made prior to Karl's death were the result of undue influence.

■ *II. Last Will and Testament.* The standard of review in an action to set aside a will is for errors at law. *In re Estate of Lachmich,* 541 N.W.2d 543, 545 (Iowa App.1995) (citing *Pearson v. Ossian,* 420 N.W.2d 493, 495 (Iowa App.1988)). Findings of facts in a law action are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity we construe the findings to uphold, rather than defeat, the judgment. *Id.* We do not weigh the evidence or the credibility of the witnesses. *Id.*

■ Plaintiffs argue Karl did not possess the testamentary capacity needed to make a will. They argue Karl's testamentary disposition was the result of undue influence. Although we have found Charlene did not overcome the presumption of undue influence from her confidential relationship in the transfer of property, a higher degree of mental competence is required for the transaction of ordinary business and the making of contracts than is necessary for testamentary disposition of property. *Daughton,* 423 N.W.2d at 896. A suspicion, but not a presumption, of undue influence arises where the dominant party in a confidential relationship participates in either the preparation or execution of the contested will. *Olsen v. Corporation of New Melleray,* 245 Iowa 407, 416, 60 N.W.2d 832, 836–37 (1953). While the burden of proof remains with the contestants, the law is well settled that, in considering the sufficiency of the evidence to support the findings of the court, properly introduced evidence must be viewed in the light most favorable to the contestants, giving them the benefit of all possible inferences. *Id.* at 413, 60 N.W.2d at 836; *In re Estate of Herm,* 284 N.W.2d at 201. The district court held plaintiffs failed to prove, by a preponderance of the evidence, Karl Baessler lacked the testamentary capacity to sign a will or that he was unduly influenced. This conclusion is supported by substantial evidence. We affirm.

■ *III. Attorney Fees.* Keith's children lastly argue the district court erred in allowing attorney fees to be paid out of the estate. Specifically, they argue the probate court should not have allowed the appointment, nor approved the fees of an attorney to represent Charlene, the personal representative of Karl's estate, at estate expense in this challenge of intervivos transfers made by Karl and Karl's will.

■ Our review is de novo. *In re Estate of Roggentien,* 445 N.W.2d 388 (Iowa

---

**2.** If Karl would have waited until his death to transfer his farm interest to Charlene, she would have received a stepped-up basis in Karl's real estate (the fair market value of the real estate at the time of Karl's death instead of what he paid for it). *See* I.R.C. § 1014(a) (1988).

App.1989). The trial court must exercise reasonable discretion in awarding attorney fees. *Id.* In an action challenging decedent's will where no special interest of the estate appears, expense to the estate may not be justified. *In re Estate of Law,* 253 Iowa 599, 113 N.W.2d 233 (1962). The Iowa Supreme Court determined the question should be narrowed to one of whether the issue is one of personal interest between the heirs and the claimants or whether it is one that justified incurring attorney fees at the expense of the estate. *Id.* Thus, the circumstances of each case must be assessed to determine if the fees are reasonably required or justified in the interest of the estate. *In re Estate of Roggentien,* 445 N.W.2d at 390.

We determine Charlene, as personal representative of Karl's estate, was correct in seeking legal assistance to defend the will contest in this case. We order, however, the attorney fees and costs should be modified in accordance with our reversal on the intervivos transfers. Costs associated with that claim should not be paid out of the estate since it was found a confidential relationship did exist and undue influence did occur.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**